Defendant-appellant, Ronald Cripps, appeals his convictions in the Preble County Court of Common Pleas for rape of a person under the age of thirteen, two counts of corruption of a minor and two counts of illegal use of a minor in nudity-oriented material or performance.[1] We affirm.
Appellant, then age twenty-eight, lived in the same house with his girlfriend and her daughter ("the daughter"), age twelve. The daughter's friend and neighbor (the "friend"), then age fourteen, would occasionally visit the daughter at appellant's house. At trial, the daughter and the friend testified for the prosecution.
According to the daughter, appellant originally acted as a "father figure" to her. However, the daughter testified that appellant soon "became sexual towards me." On one occasion, appellant told the daughter to remove her pants. The daughter testified that appellant put a rag to her face to "hypnotize her." The daughter testified that she "passed out" and when she awakened her pants were still off.
The daughter testified appellant came into her room at night to sleep on the floor and scare her. Appellant would penetrate the daughter's vagina with his fingers while she was in her bed. The daughter stated these incidents "happened a lot." In a later incident, the daughter stated that vaginal intercourse occurred between her and appellant. After the first time, the daughter testified that appellant had vaginal intercourse with her on "more than a couple" of occasions.
The daughter testified about two notes that were introduced into evidence by the prosecution. The notes were written by the daughter on two different days in which the daughter did not attend school. The first note stated: "Dear God, I'm sorry that I said that Ron was having sex with me. I'm sorry that I told everybody the lies I told about Ron. I'm sorry. * * * I love you. P.S. I won't tell no more lies about Ron because only you and me knows that Ron never done anything to me. [sic]" The second note read: "If you [appellant] don't give me five minutes of sex I [sic] tell mom that your [sic] have been having sex with me." The daughter testified that "[appellant] told me if I wrote [the notes], I wouldn't have [sic] go to school and if I tell anybody or anything, he's going to bring, if I go to Court with this, he's going to bring this up." The daughter noted that both notes were written using language chosen by appellant. After writing the notes, appellant took them from her and, until appellant was being prosecuted in the underlying case, the daughter never viewed the notes again.
The daughter described that on one occasion she played Shanghai Rummy with appellant and the friend. The daughter described that "whoever wins a hand has to dare somebody and you have to keep with the dare." After appellant won the first round of Shanghai Rummy, the daughter stated that "[appellant] threatened me and the friend to get up and dance in front of him naked." After the nude dancing occurred, the daughter dared the friend to have sexual intercourse with appellant. At that point, appellant had vaginal intercourse with the friend while the daughter was watching in the room. The friend testified that penile penetration occurred during this sexual encounter. The only difference in the friend's recitation of events from the daughter was that the friend stated that the game was strip poker.
Detective Robert Savage of the Preble County Police Department testified as to the voluntary interview appellant gave regarding the allegations of abuse. During the interview, appellant indicated that he thought the daughter had a "crush" on him, which he found "flattering." He also noted that appellant repeatedly "flashed" her breasts at him and "grabbed [appellant's] nuts." Appellant described how he and the daughter's mother gave the daughter a vibrator for her thirteenth birthday. Appellant viewed this gift as a joke to embarrass the daughter in front of her friends.
Later in the interview, appellant indicated that he thought he may have had vaginal intercourse with the daughter, but he would have been asleep during these encounters. Appellant also stated that, during the game of truth or dare and/or strip poker, the daughter and the friend began to dance and remove their clothes. Appellant indicated his response was to "put his arm across his eyes" and that appellant's girlfriend soon entered the room. Finally at the interview, appellant told Savage about the notes the daughter described at trial. Appellant remarked that the daughter "wanted to have sex with [appellant]" and if the investigation continued, he would produce the notes as evidence.
After an investigation, appellant was indicted on one count of rape of a person under thirteen years of age, two counts of corruption of a minor and two counts of illegal use of [a] minor in nudity-oriented material or performance. After a jury trial on October 14, 1997, appellant was convicted on all counts.
Appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT COMMITTED PLAIN ERROR BY PERMITTING THE TESTIMONY OF A CLINICAL PSYCHOLOGIST AS AN EXPERT WITNESS, WHERE SAID TESTIMONY WAS NOT PROBATIVE OF THE STATE'S CASE AND WAS PREJUDICIAL TO THE APPELLANT.
Assignment of Error No. 2:
 THE APPELLANT'S CONVICTIONS FOR RAPE, TWO COUNTS OF CORRUPTION OF A MINOR AND TWO COUNTS OF USE OF MINOR IN NUDITY-ORIENTED PERFORMANCE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the first assignment of error, appellant asserts that plain error was committed when the trial court allowed the testimony of a clinical psychologist as an expert witness. Donna Jean Plunkett, a clinical psychologist with the Good Samaritan Youth Resource Center, briefly testified about her psychological testing of the daughter. The purpose of the testing "was to look for personality disorder features and to help Helen [the daughter's outpatient therapist] understand if there was any depression anxiety, as well as to give her treatment recommendations."
Plunkett testified that she conversed with the daughter and that "I asked her very briefly about the sexual abuse, she just got very giddy and started moving around in her seat." Plunkett described a series of tests given to the daughter. The tests included the Multiphasic Personality Inventory Adolescent version ("MPIA"), which stated purpose was to assess "clinical pathology" in an adolescent. Plunkett noted the MPIA test was valid due to an internal consistency in the daughter's answers to a series of true-false questions. Plunkett described this consistency in terms of a "lie scale" or "validity scale." On cross-examination, defense counsel confirmed with Plunkett that the validity scale or lie scale only refers to the validity of the test, not the daughter's testimony. Finally, Plunkett concluded that the daughter was depressed, "somewhat distrustful of others," angry, "somewhat hopeless," and anxious.
As appellant concedes in his brief, no objection was made to the Plunkett's expert testimony at trial. As a general rule, failure to object at trial waives all but plain error. State v. Moreland (1990), 50 Ohio St.3d 58, 62; see Crim.R. 52(B). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." Moreland at 62.
Appellant's objections to Plunkett's testimony are that (1) the testimony was largely irrelevant, but nevertheless unfairly prejudicial; (2) the prosecution did not meet the standard for admitting testimony of an expert witness; and (3) Plunkett bolstered the veracity of the daughter's testimony. We address each of these arguments.
Expert testimony must be relevant and meet the standard for admitting expert testimony, Evid.R. 702, which states in relevant part:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
Plunkett was clearly qualified as an expert in psychology. She described the procedures and results of the MPIA test administered to the daughter, which required the interpretation of an expert witness. The tests were relevant because the results showed symptoms which would be consistent with sexual abuse and, therefore, were relevant to the daughter's credibility. Despite appellant's argument to the contrary, the fact that Plunkett's testimony did not specifically discuss "child sexual abuse accommodation syndrome" or similar psychological conditions does not render the testimony irrelevant.
Despite appellant's characterization of Plunkett's testimony, as "rambling and inconclusive", appellant also argues that Plunkett's testimony was unfairly prejudicial and rises to plain error. Appellant refers to the fact Plunkett stated that she asked the daughter very briefly about the sexual abuse. This statement merely defined the scope of Plunkett's interview with the daughter. Similarly, Plunkett's statement that she conducted the testing at the request of the daughter's outpatient therapist was relevant background and certainly does not constitute plain error.
In short, we perceive no abuse of discretion by the trial court in admitting Plunkett's expert testimony. See Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 616 (determination as to admissibility of expert testimony is in trial court's discretion and will not be reversed absent abuse of discretion).
We now address the argument that Plunkett bolstered the daughter's veracity at trial. In State v. Boston (1989), 46 Ohio St.3d 108, syllabus, the Supreme Court of Ohio held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." However, Plunkett's testimony bears no resemblance to the type of bolstering banned in Boston. Plunkett merely testified about the daughter's symptoms as revealed through psychological testing. Even if Plunkett had explicitly stated that the daughter's symptoms were consistent with sexual abuse, this court previously has held such testimony is permissible. State v. Vaughn (1995), 106 Ohio App.3d 775,784. Plunkett never vouched for the credibility of the daughter or indicated that her testimony was truthful. See Boston at syllabus. Since admission of Plunkett's testimony was not plain error, the first assignment of error is overruled.
In the second assignment of error, appellant argues that the convictions were against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the appellate court reviews the record as a "thirteenth juror." State v. Thompkins (1997), 78 Ohio St.3d 380,387. A reversal is warranted when the appellate court disagrees with the resolution of the conflicting testimony at the trial level. Id. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. Hawkins (1993), 66 Ohio St.3d 339,344.
The standard of review for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387.
Appellant's argument is essentially that the victims' testimony was not credible and/or medical evidence is required. First, this argument ignores many incriminating statements appellant gave during the interview with Savage. The jury could have concluded his explanations of his conduct during the interview were implausible. Also, the notes easily could have been viewed as an attempt by appellant to cover his tracks. Second, there is no requirement under Ohio law that a conviction for appellant's crimes must have medical evidence. Third, it is fundamental that the trier of fact is in the best position to decide the veracity of witnesses. Hawkins at 344. The jury clearly believed both victims' testimony and we cannot conclude that the jury "clearly lost its way." Thompkins at 387. Accordingly, the second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] R.C. 2907.02(A)(1)(b), rape, states that [n]o person shall engage in sexual conduct with another * * *, when any of the following applies: * * * The other person is less then thirteen years of age, whether or not the offender knows the age of the other person.
R.C. 2907.04(A), corruption of a minor, states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another * * *, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
R.C. 2907.323(A)(3), illegal use of minor in nudity-oriented material or performance, states that "[n]o person shall do any of the following: * * * Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity." The exceptions of R.C. 2907.323(A)(3)(a) (b) are inapplicable to this case.