THE STATE OF OHIO, APPELLEE, *v.* HAWKINS, APPELLANT.

[Cite as *State v. Hawkins* (1993), 66 Ohio St.3d 339.]

(No. 92–405—Submitted February 9, 1993—Decided June 9, 1993.)

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*Robert R. Hastings, Jr.,* for appellant.

DOUGLAS, J. Appellant presents a number of issues for our determination. (See Appendix, *infra.*) We have considered appellant's propositions of law, independently weighed the aggravating circumstances against the evidence presented in mitigation, and reviewed the penalty of death for appropriateness and proportionality. Upon review, and for the reasons which follow, we affirm the judgment of the court of appeals, and uphold a single death sentence for each killing.

I

While R.C. 2929.05 requires this court to review capital cases in a certain manner, the statute does not require that we address and discuss, in opinion form, each and every proposition of law raised by the parties. See *State v. Poindexter* (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570. See, also, *State v. Bonnell* (1991), 61 Ohio St.3d 179, 181, 573 N.E.2d 1082, 1085. Upon review

of appellant's propositions of law, we fail to detect any errors that would undermine our confidence in the outcome of appellant's trial. We address, in opinion form, only those matters which merit some discussion.

## II

On June 14, 1989, before appellant was a suspect in the homicide investigation, police questioned appellant concerning the whereabouts of the pager appellant used the night of the murders. Appellant was arrested for obstruction of justice when he refused to tell police where the pager was located. Appellant was jailed on that charge from June 14, 1989 until a municipal court dismissed the case on June 23, 1989. On June 27, 1989, appellant was arrested for the aggravated murders of Richard and Marteen based upon an eyewitness identification and fingerprint evidence. Appellant was indicted on September 6, 1989 and trial was set to commence on September 25, 1989. On September 22, 1989 and again on September 25, 1989, appellant moved to dismiss the indictment, claiming that he had been denied his statutory (R.C. 2945.71) right to a speedy trial. The trial court denied appellant's motions.

In his third proposition of law, appellant claims that he was denied the right to be tried within the time periods specified in R.C. 2945.71 and that the trial court should have dismissed the indictment as requested. Specifically, appellant argues that the time he spent in jail for obstruction of justice (June 14 to June 23, 1989) should have been charged against the state in calculating the time period within which appellant was to be brought to trial for the aggravated murders and robberies.

For purposes of the speedy trial calculation in this case, we find that the conduct giving rise to the charge of obstruction of justice (failure to divulge the pager's location) was unrelated to the conduct giving rise to the charges of aggravated murder and robbery, and that the period from June 14 to June 23, 1989 was properly excluded from the speedy trial computation. Appellant was arrested in connection with the aggravated murders on June 27, 1989 and trial on the associated charges was originally scheduled for September 25, 1989. Any delay after September 25, 1989 was at appellant's request. We find no violation of R.C. 2945.71 and, thus, we reject appellant's third proposition of law.

## III

R.C. 2945.18 requires that a venire in a capital case "shall be served and returned by the sheriff at least fifteen days before the date fixed for trial."

Here, there is no dispute that the special venire was served only fourteen days before the date originally set for appellant's trial.

In his fourth proposition of law, appellant contends that the trial court erred in failing to dismiss the indictment on the basis of an untimely service of the special venire. However, appellant has failed to demonstrate any prejudice as a result of the technical violation of R.C. 2945.18 and, thus, appellant's fourth proposition of law is not persuasive.

## IV

Henry Brown, Jr. testified at trial under a grant of immunity from prosecution for his involvement (if any) in the aggravated murders and robberies of Richard and Marteen.[1] Appellant testified at trial and adamantly denied any involvement in the crimes. Appellant presented alibi witnesses in his defense and vigorously challenged Brown's credibility as a witness.

In his seventh proposition of law, appellant essentially argues that the evidence fails to establish his identity as the killer of Richard and Marteen and that the jury "lost its way and created a manifest miscarriage of justice" in returning verdicts against him. Further, appellant suggests that the evidence is insufficient to sustain his convictions for the aggravated (felony) murder and robbery of Richard. Appellant's contentions are not well taken.

In this proposition of law, appellant in effect asks us to evaluate the credibility of witnesses and resolve evidentiary conflicts in his favor. However, in reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic*.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. Additionally, this court "may weigh evidence only to determine whether it is of sufficient probative force to support a finding of guilt." *State v. Tyler* (1990), 50 Ohio St.3d 24, 33, 553 N.E.2d 576, 589. Thus, the weight to be given the evidence and the credibility of the witnesses are issues properly left to the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

In the case at bar, the evidence was more than sufficient to establish appellant's identity as the killer. Brown testified that he saw appellant shoot Richard twice in the head at close range and that Marteen was already dead at

---

1. The written agreement for immunity indicated that Brown, a juvenile, had been bound over to the Hamilton County Grand Jury (from juvenile court) on charges of complicity to aggravated murder and robbery. Apparently, Brown was never indicted in connection with these crimes.

the murder scene. The evidence at trial established that the weapon used to kill Richard was the same weapon used to kill Marteen. Both victims were killed in an identical manner.

Other evidence supported Brown's identification of appellant as the perpetrator of the crimes. Witnesses heard gunshots (four shots altogether) at the time and location that Brown claimed to have witnessed the murders. Several minutes later, Kenneth Boehmler observed someone meeting appellant's general physical description apparently attempting to abandon a silver-gray sedan (and a passenger) in the vicinity of the murder scene.

Additionally, appellant admitted to having negotiated a drug deal with the victims on the evening of June 11, 1989. Appellant provided the men with his pager number and instructed them to page him later that night. The victims, who had approximately $1,400, paged someone just two hours before the killings. Appellant's pager number was found in Richard's pocket. The money the victims had intended to use to purchase marijuana from appellant (and the jewelry that Marteen had been wearing) were missing from the Hyundai sedan. Marteen's pockets were turned inside out, indicating that robbery was the motive for the killings.

Moreover, appellant's fingerprints were found inside the Hyundai sedan in which the victims were murdered. One of the fingerprints, appellant's bloody thumbprint, presented compelling evidence of appellant's guilt when considered in connection with all the other evidence contained in the record.

Appellant's attack on Brown's credibility and the strength of appellant's alibi defense were issues for the jury. We find that the direct and circumstantial evidence in this case, and the reasonable inferences which can be drawn therefrom, clearly support the jury's findings. In so holding, we specifically reject appellant's argument that the evidence is insufficient to sustain his convictions for the aggravated (felony) murder and aggravated robbery of Richard. The evidence is sufficient to support a finding that Richard was killed by appellant during the course of an aggravated robbery of Marteen. A reasonable jury could infer that Marteen still possessed the money for the drug purchase and was wearing his rings at the time of the murders. Furthermore, appellant personally robbed Richard of the Hyundai sedan, and that constituted aggravated robbery.

Upon a careful review of the record before us, we are convinced that the evidence established appellant's guilt, on all charges and specifications, beyond a reasonable doubt. Accordingly, we reject appellant's seventh proposition of law.

## V

On previous occasions, we have held that where a defendant is convicted on two aggravated murder counts involving a single killing, the trial court may sentence on only one count. See *State v. Huertas* (1990), 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1066, and *State v. Waddy* (1992), 63 Ohio St.3d 424, 447, 588 N.E.2d 819, 836. Here, appellant was convicted and sentenced on two counts of aggravated murder for each killing. Although appellant has failed to raise the issue, we declare a merger of the two separate convictions for each killing such that a single death sentence remains for each of the two homicides.

## VI

Prior to trial, appellant filed a motion with the juvenile court requesting the release of all juvenile court records pertaining to Henry Brown, Jr., the state's eyewitness to the murder of Richard. Appellant's motion was denied by that court. Appellant then requested the trial court to order the release of Brown's juvenile court records, or to perform an *in camera* inspection of such records to determine if any information would benefit the defense. The trial judge conducted an *in camera* review and determined that there was nothing in the records of any relevance to the defense. The trial court refused to order the release of the records or to seal and append them as an appellate exhibit.

In his fifth proposition of law, appellant claims that he was denied due process by the trial court's refusal to include the records in question as part of the record on appeal. However, appellant has failed to make a threshold showing, supported by any legal authority, that he had any right to obtain the juvenile court records in the first instance. Further, appellant's counsel candidly admitted at trial that his request for Brown's juvenile court records was nothing more than a fishing expedition, and appellant has never been able to demonstrate any specific need for the records. Under these circumstances, we are in complete agreement with the court of appeals that absent some threshold showing of entitlement, no error resulted from the denial of appellant's request for access to the juvenile court records or from the manner in which the record in this case was preserved for appellate review.

Accordingly, appellant's fifth proposition of law is not well taken.

## VII

At the close of evidence in the penalty phase, appellant moved for a mistrial claiming that the cumulative effect of alleged prosecutorial misconduct deprived appellant of a fair trial. Appellant's motion was denied. In his first

proposition of law, appellant suggests that certain episodes of alleged misconduct by prosecutors adversely affected his rights to a fair trial and that the trial court erred by not declaring a mistrial. Appellant's arguments are not persuasive.

In this proposition of law, appellant lists a number of instances of alleged prosecutorial misconduct. The five areas of alleged misconduct are: (1) the failure to disclose evidence favorable to the defense; (2) the use of perjured testimony; (3) improper tactical use of cross-examination to violate appellant's rights to confrontation; (4) improper characterization of defense testimony; and (5) improper statements made during closing arguments.

With regard to the first two instances of alleged misconduct (that appellee failed to disclose favorable evidence and used perjured testimony), appellant's arguments are not adequately supported by the record. In addition, appellant's argument concerning the alleged use of "perjured" testimony was never properly raised at trial in support of the motion for a mistrial.

The third incident of alleged misconduct (tactical use of cross-examination) involved admissions that appellant allegedly made to Keith Miree, appellant's fellow inmate at the Hamilton County Justice Center. Prior to trial, the state expected to call Miree as a witness. Prosecutors had a detailed statement from Miree which reflected that appellant had admitted to killing the victims and had admitted making a mistake by not killing Henry Brown, Jr. At some point before trial, Miree apparently attempted to solicit a bribe from appellant's stepfather in exchange for favorable testimony. Thus, Miree was not called as a witness during the state's case-in-chief as his value as a witness had been substantially compromised. However, during cross-examination of appellant, the prosecutor asked the following questions concerning Keith Miree:

"Q. Did you have an occasion to tell him you, in fact, killed these boys[.] It wasn't about drugs, it was about money?

"A. No, sir.

"Q. You didn't tell him that?

"A. No, sir.

"Q. Did you have an occasion to tell Keith Miree you should have killed that young boy too?

"A. No, sir.

"Q. Never told him that?

"A. No, sir."

Appellant objected to this line of questioning. When the prosecutor admitted that he would "probably not" call Miree as a rebuttal witness, the trial court sustained appellant's objections and admonished the jury to disregard the questions and answers pertaining to the alleged discussion between appellant and Miree. While it is arguable whether the prosecutor committed misconduct by asking these questions, we find that the trial court took sufficient steps to ensure that no prejudice ensued. Accordingly, we do not believe that this incident required the declaration of a mistrial or denied appellant his right to a fair trial.

The fourth category of alleged misconduct (improper characterization of defense testimony) involved one occasion when the prosecutor characterized testimony as "incredible," and one later occasion where the prosecutor characterized a defense witness's testimony as "ridiculous." The jury was instructed to disregard the first comment and, with respect to the second comment, the prosecutor was admonished to avoid any further personal characterizations of defense testimony. Although these remarks by the prosecutor should not have been made, we find no prejudicial error resulting from the isolated incidents.

The final category of alleged misconduct involves statements made by the prosecutor in closing argument. In our judgment, the only truly questionable statement made by the prosecutor during closing arguments was appropriately addressed by the trial court, which sustained a defense objection and instructed the jury to disregard the statement.

In *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400, we stated that the conduct of a prosecutor during trial "cannot be made a ground of error unless the conduct deprives defendant of a fair trial." Here, we find no cause to seriously question the fairness of appellant's trial or the integrity of the trial court's findings. The instances of prosecutorial misconduct, viewed singly or together, did not deny appellant the right to a fair trial, and did not entitle him to the declaration of a mistrial. Accordingly, we reject appellant's first proposition of law.

## VIII

In his tenth and eleventh propositions of law, appellant argues that he was deprived of the effective assistance of counsel during the trial court proceedings. Appellant failed to raise these arguments before the court of appeals and, thus, appellant's claims of ineffective assistance of counsel have been waived. However, even if appellant's arguments are considered on the merits, appellant has failed to satisfy his burden of establishing ineffective assistance under the standards set forth in *Strickland v. Washington* (1984),

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, we reject appellant's tenth and eleventh propositions of law.

## IX

Appellant's second proposition of law involves the denial of a motion for a new trial. The facts pertinent to this proposition of law are as follows:

In July 1990, while appellant's case was on appeal to the court of appeals, Maurice Lamar and Judy Hogan delivered a Raven Arms .25 caliber semiautomatic pistol to appellant's appellate counsel, Robert R. Hastings, Jr. That weapon was similar to the type of weapon used in the murders of Richard and Marteen. Lamar claimed to have been given the weapon by Henry Brown, Jr. in May 1990, five months after appellant's trial and almost one year after the murders. Attorney Hastings delivered the weapon to the prosecutor's office which, in turn, delivered the weapon to a crime laboratory where it was marked for identification as "Q–19." As submitted to the laboratory, Q–19 was inoperable. The weapon had no firing pin, cocking indicator or magazine cartridge. However, the weapon was restored and rendered operable for purposes of comparison testing.

Q–19 was test-fired and the test bullets were compared to the bullets that killed Richard and Marteen. The test cartridges were also compared to the spent cartridge casings recovered from the Hyundai sedan in which the victims were murdered. The test bullets did not have the same individual characteristics as the bullets that killed Richard and Marteen. Additionally, the test cartridges did not have the same characteristics as the spent cartridges recovered from the Hyundai sedan. Jeffrey R. Schaefer, a ballistics expert who performed the testing, concluded that no evidence existed to suggest that Q–19 was the murder weapon and that other evidence indicated that it was not. Nevertheless, Schaefer could not rule out the *possibility* that Q–19 was the murder weapon if the barrel of the gun had been altered sometime after the murders, and if the weapon had a firing pin. In this regard, the bullets fired from Q–19 had the same general class characteristics as the bullets that killed Richard and Marteen, but Raven Arms .25 caliber pistols all produce the same general class characteristics. Raven Arms .25 caliber pistols are, perhaps, the most common low-budget street weapon in the Cincinnati area.

On December 14, 1990, appellant filed a motion with the trial court requesting a new trial on the basis of newly discovered evidence. Appellant supported this motion with, among other things, Lamar's affidavit (alleging that Lamar received the firearm from Brown), and the deposition testimony of Jeffrey Schaefer. Following a hearing, the trial court denied the motion for a

new trial. The court of appeals consolidated appellant's appeal from the denial of the motion with appellant's appeal from his convictions and sentences.

In his second proposition of law, appellant contends that the trial court erred in denying his motion for a new trial. We disagree.

The decision to grant or deny a motion for a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed. *State v. Williams* (1975), 43 Ohio St.2d 88, 72 O.O.2d 49, 330 N.E.2d 891, paragraph two of the syllabus. In *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus, this court held that:

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. * * *" (Citation omitted.)

We find that the trial court did not abuse its discretion in denying appellant's motion for a new trial as the standards set forth in *Petro* have not been satisfied. Schaefer's deposition testimony suggests that the weapon at issue is not the murder weapon. Further, even if we were to assume that Lamar would make a perfectly credible witness if a new trial was granted, Brown's possession of an inoperable firearm some five months after trial and almost a year after the murders does not disclose a strong probability that the outcome of a second trial would be any different. While it is true that Brown testified at trial that he did not have a .25 caliber handgun, the newly discovered evidence does not necessarily contradict that statement. Finally, even if, by some stretch of the imagination, this Raven Arms .25 caliber handgun was the murder weapon, Brown's possession of it in May 1990 would not be inconsistent with appellant's guilt or in any way explain appellant's bloody thumbprint inside the Hyundai sedan.

As the trial court did not abuse its discretion in denying appellant's motion for a new trial, we reject appellant's second proposition of law.

## X

With respect to appellant's remaining propositions of law, after careful review of the record and case law, we fail to detect any errors that may be

considered to have affected the outcome of appellant's trial. Many of the arguments presented by appellant have been addressed and rejected by this court under similar circumstances and we adhere to our position on those issues. Further, a number of appellant's arguments have not been properly preserved for appellate review.

## XI

Having considered appellant's propositions of law, we must now independently review appellant's death sentences for appropriateness and proportionality. Appellant shot Richard and Marteen in the head at close range during the course of an aggravated robbery. Again, we find the aggravating circumstances for which appellant was found guilty, R.C. 2929.04(A)(5) and (7), are clearly shown on the record before us.

Appellant was no older than twenty-one years at the time the offenses were committed. This R.C. 2929.04(B)(4) mitigating factor is entitled to some, but very little, weight in mitigation. Otherwise, we find no credible mitigating evidence on the record before us and conclude that the aggravating circumstances for each killing outweigh the evidence in mitigation beyond a reasonable doubt.

As our final task, we have undertaken a comparison of the death sentences in this case to those in which we have previously affirmed the death penalty. We have upheld the death penalty in cases involving multiple murders (see, e.g., State v. Montgomery [1991], 61 Ohio St.3d 410, 575 N.E.2d 167; and State v. Moreland [1990], 50 Ohio St.3d 58, 552 N.E.2d 894) and in cases involving robbery-murder (see, e.g., State v. Greer [1988], 39 Ohio St.3d 236, 530 N.E.2d 382). Appellant's death sentences are neither excessive nor disproportionate.

For the reasons set forth herein, we affirm appellant's convictions (as modified) and the penalty of death.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.

PFEIFER, J., dissenting. The aggravating circumstances in this case fail to outweigh the mitigating factors, and I therefore dissent from the majority's decision upholding Shawn Hawkins's death sentence. The key mitigating factor in this case is residual doubt.

The truth of what really happened in the early morning of June 12, 1989 died with Diamond Marteen and Terrance Richard. The trial below was filled

with conflicting stories and conflicting alibis. Hawkins, Rob Burns, and the state's only eyewitness, Henry Brown, Jr., or some combination of those three persons, were at the murder scene when the murders took place. Hawkins was the only one unlucky enough to leave fingerprints behind. The only evidence that he was the triggerman was the testimony of Brown, who testified under immunity after being charged with complicity to commit both aggravated robbery and aggravated murder. Brown also testified that Burns was in the car with Hawkins and that Burns threatened Brown with a gun when he realized that Brown had witnessed Richard's murder. However, Burns was apparently never charged in this case.

The mitigating factor of residual doubt dovetails with the mitigating factor specifically set forth in R.C. 2929.04(B)(6), which regards "the degree of the offender's participation in the acts that led to the death[s] of the victim[s]." We can be relatively certain from the fingerprint evidence that Hawkins was in the car when the victims were murdered, or at least shortly thereafter. However, given that the only testimony naming him as the actual killer came from Brown, we can never be sure what role Hawkins really played.

Another mitigating factor in this case is the status of the victims. Marteen and Richard were not innocents—they were in the middle of a sizeable illegal drug transaction when they were killed. They chose to partake in criminal, dangerous activity and paid the consequences.

Finally, Hawkins's relatively young age is another mitigating factor. He was no older than twenty-one at the time of the offense.

The combined mitigating factors in this case, with special emphasis on residual doubt, are not outweighed by the aggravating circumstances. Therefore, Hawkins's death sentence should be reversed and the cause remanded for resentencing under R.C. 2929.06.

### Appendix

"First Proposition of Law[:] Where the substantial rights of the accused to a fair trial are adversely affected by the course of misconduct by the prosecuting attorneys the trial court shall order a mistrial.

"Second Proposition of Law[:] Where the newly discovered evidence would create a strong probability of a different result at trial, the trial court shall order a new trial.

"Third Proposition of Law[:] Where the defendant is not tried within the times governed by Section 2945.71 of the Ohio Revised Code, the court shall dismiss the charges against the accused.

"Fourth Proposition of Law[:] Where the court fails to serve the special venire at least fifteen days prior to the date fixed for trial, the court has

violated the statutory requirements relating to the establishment of a special venire in a captial [*sic*] case.

"Fifth Proposition of Law[:] Where the trial court refuses access to the juvenile court records of a co-defendant and refuses to seal a copy of records for review on appeal, it deprives the appellant of due process.

"Sixth Proposition of Law[:] During deliberations where the jury makes reasonable requests of the court to assist them in their deliberations and the trial court ignores such request, the defendant is prejudiced by such refusal; and where the trial court conducts proceedings with the jury without the defendant or counsel being present, the court violates the defendant's right to be present at every stage of the trial.

"Seventh Proposition of Law[:] Where the state fails to adduce proof beyond a reasonable doubt on each and every element, the verdicts are contrary to law, or in the alternative[,] where the jury lost its way and created a manifest miscarriage of justice, the convictions must be reversed and a new trial ordered.

"Eighth Proposition of Law[:] Where the questioning of prospective jurors leads them to believe that the responsibility for determining the appropriateness of the defendant's death rests with the trial court, it is error to empanel [*sic*] a jury in that manner.

"Ninth Proposition of Law[:] Where the Ohio capital statutory sentencing scheme violated due process and the cruel and unusual punishment clauses of the United States Constitution, the trial court shall not impose the death penalty.

"Tenth Proposition of Law[:] Where the trial counsel is ineffective in the penalty phase of trial, the convictions and sentences of death shall be set aside.

"Eleventh Proposition of Law[:] Where the trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result, the defendant is denied effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution."