OPINION
In May 1990, Camilo Lopez Alvarez was convicted by a Franklin County jury of murder, theft of an automobile, burglary, theft of a firearm, and having a weapon while under disability. The murder and auto theft convictions resulted directly from the August 1989 death of William Marscio. The burglary, theft and weapon under disability charges related to a subsequent incident at the apartment of Long Lam, the state's primary witness in both cases.
Mr. Alvarez was sentenced accordingly, and appealed his convictions to this court. On direct appeal, this court affirmed.State v. Alvarez (Nov. 26, 1991), Franklin App. Nos. 91AP-73 
91AP-74, unreported (1991 Opinions 5418) (hereinafter "AlvarezI"). The Supreme Court of Ohio declined jurisdiction in April 1992.
In September 1996, new defense counsel filed a motion in the trial court seeking a new trial pursuant to Crim.R. 33 or, alternatively, R.C. 2953.21 post-conviction relief. The motion came on for hearing on January 30, 1998. Following the hearing, the parties submitted additional memoranda and proposed findings of fact and conclusions of law. Pursuant to a decision and entry journalized September 30, 1998, the trial court ultimately overruled appellant's motion in toto.
Camilo Lopez Alvarez (hereinafter "appellant") has timely appealed the trial court's denial of his motion, assigning four errors for our consideration:
ASSIGNMENT OF ERROR 1:
 THE TRIAL COURT ERRED TO THE APPELLANT'S PREJUDICE IN PREMATURELY DETERMINING FOLLOWING AN EVIDENTIARY HEARING ON A MOTION FOR NEW TRIAL THAT CERTAIN WITNESSES WOULD NOT BE AVAILABLE AT A SUBSEQUENTLY ORDERED NEW TRIAL.
 ASSIGNMENT OF ERROR 2:
 THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE RIGHT OF MR. ALVAREZ TO DUE PROCESS OF LAW IN OVERRULING HIS MOTION FOR NEW TRIAL FINDING THAT THE EVIDENCE OFFERED THROUGH JOAQUIN OSPINA OF A THIRD PARTY'S CONFESSION TO MURDER WHICH COMPLETELY EXCULPATED APPELLANT WAS NOT OF SUCH WEIGHT THAT IT CREATED A STRONG PROBABILITY THAT A DIFFERENT RESULT WOULD BE REACHED AT A SECOND TRIAL.
 ASSIGNMENT OF ERROR 3:
 THE TRIAL COURT ERRED IN FAILING TO RULE ON APPELLANT'S MOTION FOR NEW TRIAL BASED ON WITNESS MISCONDUCT PURSUANT TO CRIMINAL RULE 33 (A)(2). THE WITNESS MISCONDUCT IN THIS CASE DEPRIVED APPELLANT OF HIS SUBSTANTIAL RIGHTS TO A FAIR TRIAL AND TO DUE PROCESS. APPELLANT WAS DEPRIVED OF THESE RIGHTS WHEN HE WAS CONVICTED WITH THE USE OF FALSE TESTIMONY PRESENTED THROUGH THE STATE'S KEY WITNESS.
 ASSIGNMENT OF ERROR 4:
 THE TRIAL COURT ERRED IN FAILING TO RULE ON APPELLANT'S FIRST AND SECOND CLAIMS FOR RELIEF IN THE POST CONVICTION PETITION WHEREIN APPELLANT ALLEGED A DUE PROCESS VIOLATION UNDER BOTH FEDERAL AND STATE CONSTITUTIONS.
Given the nature of post-conviction proceedings, and the standards of review by which we are bound in reviewing same, we preliminarily review the evidence presented at the initial trial. We glean the relevant facts adduced at trial from this court's opinion in Alvarez I, which summarized the following events:
 William R. Marscio was murdered in his apartment on or about August 1, 1989. His body was discovered on August 17, 1989 after several neighbors complained about a foul odor emanating from his apartment. Marscio's body was found lying on the couch in the living room. A television schedule was on the coffee table. The page was turned to late night viewing for the date July 31, 1989. Two delivery notices were found on the front door. One was dated August 1, 1989 and the other was dated August 2, 1989. Marscio attended a party at the home of Brenda Jewell on the evening of July 31, 1989. Defendant and Marscio left that party together in Marscio's car at 1:30 a.m. Defendant was the last known person to see Marscio alive.
 Responding to an anonymous tip, the police discovered Marscio's car parked in the parking lot at Mount Carmel East Hospital. The police ultimately traced the information contained in the tip to Long Lam. Lam testified that sometime after August 1, defendant came to his house and asked a favor of him. Defendant produced a handgun and asked that Lam keep it for him. Lam further testified that defendant told him that he had killed a man named Bill. Defendant said that he had taken Bill's car and that he had parked it at Mount Carmel East Hospital. Lam later went with defendant to see the car.
 Lam's apartment was burglarized several days later. Among those items taken were the handgun defendant had left with Lam, some clothing, a camera, and a rifle. Brenda Jewell testified that defendant called her on August 8, 1989 and asked her to pick him up at Lam's apartment. When she arrived, defendant placed two green garbage bags and a navy blue gun case in her trunk. Another witness, Marvin Warner, testified that defendant gave him some clothing and a handgun. Lam later identified the clothing as his own and the gun as the one defendant had brought to his apartment some days earlier. When defendant was arrested on August 22, he had in his possession the rifle taken from Lam's apartment.
 For his part, defendant denied killing Marscio and suggested that Lam was the actual perpetrator of the crime. As for the burglary charge, defendant maintained that he had purchased Lam's rifle. Alvarez I, 5419-5420.
This court affirmed, determining that all of appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. In reaching this conclusion, the Alvarez I court stated:
 * * * If believed, Long Lam's testimony alone is sufficient to support defendant's convictions of murder, theft of an automobile, and having a weapon while under a disability. The burglary and theft of a weapon charges depend to a greater degree on circumstantial evidence, but this fact does not detract from the sufficiency of that evidence. * * * " [Id. at 5422-5423.]
In appellant's motion seeking a new trial (pursuant to Crim.R. 33 or R.C. 2953.03), appellant alleged that he had obtained new evidence showing that he did not kill Marscio and that Marscio had actually been killed by Lam, the state's key witness, and another man, Tomas Rodriquez. Appellant attached to his motion an affidavit of Joaquin Ospina, in which Ospina stated that while he and Rodriquez were cellmates in the Franklin County Jail in 1991, Rodriquez confessed that he and Lam killed Marscio. Appellant also attached to his motion several other documents, including the following: (1) a polygraphist report indicating that Ospina had been truthful during a polygraph examination concerning the allegations in question; (2) an affidavit of another prisoner who witnessed Rodriquez and Ospina together in the Franklin County Jail; (3) copies of county jail records indicating that Ospina and Rodriquez were at the jail at the same time in 1991; and (4) U.S. District Court records detailing the sentence Lam received for a federal money laundering conviction in November 1992, and further indicating that he was involved in a conspiracy with Rodriquez to distribute cocaine in Columbus, Ohio.
On January 30, 1998, the trial court held an evidentiary hearing on appellant's motion. At the hearing, appellant presented two witnesses?Ospina and the polygraphist, Charles Hayes.
Ospina testified, through the assistance of an interpreter, in accordance with his prior affidavit. In particular, Ospina testified that he was a former Colombian police officer who entered the United States in 1989. In May 1991, while in the custody of the Franklin County Jail on drug trafficking charges, he met Rodriquez, with whom he shared a cell. During this time, Rodriquez told a story to Ospina of how he (Rodriquez) and Long Lam had killed a man named Bill and framed a fellow "countryman" named Camilo.
According to Ospina, Rodriquez gave the following account of the killing. Rodriquez was in the drug business in Columbus, and a distributor named Bill owed Rodriquez money for drugs already delivered. Seeking to find a way to get the money out of Bill, Rodriquez obtained a copy of the key to Bill's apartment from one of Bill's former roommates or friends. Then, with the help of Long Lam, Rodriquez entered Bill's apartment early one morning and found Bill asleep on the sofa. Bill threatened to call the police, at which point Rodriquez got mad and struck Bill in the head with a baseball bat four or five times. At the time, Rodriquez did not know if Bill was dead or unconscious. Rodriquez then searched the apartment for anything of value but only found four ounces of cocaine in the refrigerator.
Rodriquez then went to the door to see if any neighbors had noticed the commotion in the apartment. At that time, Rodriquez saw Lam holding a bloody knife. Lam then told Rodriquez that he had stabbed Bill in the heart to make sure that he was dead. Lam wrapped the knife in a paper towel and took it with him and Rodriquez when they left. A few weeks later, Lam informed Rodriquez that Lam had framed appellant by telling a bartender that appellant had committed the murder because appellant owed Rodriquez money.
Ospina then testified that in 1995, he had been transferred to the Madison Correctional Institution, where he met appellant. As a result of their conversations, Ospina realized that appellant was the person framed by Rodriquez and Lam. Finally, Ospina testified that he asked appellant to get him in touch with appellant's attorney, and that Ospina had never told appellant personally about Rodriquez's story.
Over the state's objection, the trial court allowed the testimony of the polygraphist, Charles Hayes, for the limited purpose of the pending motion. Hayes, a retired police lieutenant, testified that he conducted a polygraph examination of Ospina with the assistance of an interpreter. Hayes testified that the test results revealed that Ospina answered truthfully in reference to Rodriquez's prior confession; that he (Ospina) did not know appellant before August 1995; and, that appellant did not originally tell him about the murder.
In its September 30, 1998 decision and entry denying appellant relief, the trial court held that there was not a strong probability that the newly discovered evidence would change the result should a second trial be held. Specifically, the court below ruled:
 Ultimately, however, this Court is not persuaded that the evidence presented by defendant is "of such weight that a different result would be reached at the second trial." Shepard, supra. First, any polygraph results, even those of Ospina, in accordance with the present law, are inadmissible at trial. See Scheffer, supra. More importantly, however, Ospina is not confessing to the crime that Defendant was convicted of, he is only reporting that he was told by another individual, Rodriquez, who did not testify at the hearing in this Court, that Rodriquez actually committed the crime, in tandem with Lam. The instant Motion contained no affidavits nor statements of any kind from either Lam or Rodriquez. Neither of them testified in this Court on defendant's behalf on January 30, 1998 and defendant does not contend that either of them would ever testify on his behalf. Therefore, although the evidence before the Court, if admissible, would be somewhat contradictory to that which was presented at defendant's first trial, there is not a strong probability that it would change the result of the first trial in the event a second trial was conducted.
In his first assignment of error, appellant contends that the trial court erred when it improperly based its decision to deny his motion for new trial on the ground that the newly discovered evidence would be inadmissible hearsay because it was not specifically offered by Rodriquez or Lam.
Appellant first argues that the trial court's determination that the evidence would not be offered by Rodriquez or Lam at a new trial was premature. We agree that the trial court erred in its implicit finding that appellant's motion seeking a new trial must necessarily fail because of the likelihood that neither Lam nor Rodriquez
"would ever testify on [appellant's] behalf." Even if that were the probable scenario, such a determination is not only premature but also hardly dispositive of the entire issue.
If indeed neither Lam nor Rodriquez refused to testify at a new trial which, again, is a premature determination, appellant correctly observes that the trial court erred in failing to recognize that Ospina's testimony itself could then be admissible at a subsequent new trial.
Pursuant to Evid.R. 801(C), "hearsay" is defined as follows:
 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
Generally, of course, hearsay is not admissible. Evid.R. 802. However, there exists a plethora of exceptions, including instances where the declarant has been deemed "unavailable" to testify. Pursuant to Evid.R. 804(A), the definition of "unavailability of a witness" includes five enumerated situations, those in which the declarant:
 (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;
 (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
 (3) testifies to a lack of memory of the subject matter of the declarant's statement;
 (4) is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity; or
 (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means. (Emphasis added.)
See State v. Cornell (1998), 129 Ohio App.3d 106, 109.
Given the circumstances of this case, potential witnesses Rodriquez and Lam could indeed, if summoned to court to testify, ultimately be deemed "unavailable" based upon a very reasonable probability that both would be exempted from testifying based upon their privilege against self-incrimination, that circumstance specifically contemplated by Evid.R. 804(A)(1) above. Thus, the direct testimony of Ospina regarding the declarations made to him by the unavailable declarant could be deemed admissible. The trial court erred in finding to the contrary.
Another "unavailability" finding might exist if, prior to a new trial, appellant is unable to secure the in-court presence of the declarant, now incarcerated in the federal prison system. The record establishes that appellant, "the proponent of the declarant's statement," did earnestly yet unsuccessfully attempt "by process or other reasonable means" to procure the declarant's attendance at the evidentiary hearings. Accordingly, a finding of "unavailability" could be based upon Evid.R. 804(A)(5).
Having determined that the hearsay evidence could be admitted if the declarant is deemed "unavailable," we turn now to the specific "declarant unavailable" exception applicable here. Pursuant to Evid.R. 804(B), declarations against penal interest are not to be excluded by the hearsay rule if the declarant is unavailable. This hearsay exception, Evid.R. 804(B)(3), provides as follows:
 Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. (Emphasis added.)
Thus, a statement against penal interest must also be corroborated by "circumstances clearly indicat[ing] the trustworthiness of the statement." Based upon the record before us, those circumstances indicating trustworthiness are more than sufficient.
In State v. Landrum (1990), 53 Ohio St.3d 107, 113, the Supreme Court of Ohio examined an analogous issue. A trial court excluded testimony of a potential witness who would have testified that another person confessed to him that he, not Landrum, was guilty of the murder in question. The confessor had earlier refused to testify as a prosecution witness based upon his privilege against self-incrimination. The Supreme Court of Ohio found him to be "unavailable." The court further found that the statement was one against penal interest. Finally, the court deemed as sufficient corroborating circumstances Landrum's own claim of innocence and limited physical evidence inculpating him.
Given the state of the record of appellant's affidavits and evidentiary hearing, including the trial court's limited consideration of the polygraph results, we believe the same degree of indicia of trustworthiness of the statements against penal interest exists here.
Pursuant to the above, therefore, if the declarants are ultimately brought before the court and decline to testify, or appellant is unable to procure the witnesses for trial, Ospina's hearsay testimony would be admissible as statements against penal interest. Furthermore, in the unlikely event that the declarants were to testify, Ospina's testimony would be admissible, at the very least, to impeach the declarants/witnesses. Obviously, if the declarant is called to testify on behalf of appellant, the witness would likely be deemed a "hostile" witness and subjected to vigorous examination by appellant's counsel. In any event, the trial court did err to the extent it overruled appellant's motion for new trial based upon this premature evidentiary ruling.
The first assignment of error is sustained.
The second assignment of error directly challenges the trial court's decision to deny appellant's motion for new trial. In particular, appellant contends that the trial court abused its discretion in ruling that the new evidence was not of such weight as to create a strong probability that a different result would be reached in a second trial.
Crim.R. 33, which governs motions for new trial, provides, in relevant part, as follows:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
 (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
In order to prevail on a motion for a new trial based upon newly discovered evidence pursuant to Crim.R. 33(A)(6), the defendant must establish that the evidence: (1) is of such weight that it creates a strong probability that a different result would be reached at the second trial; (2) has been discovered since trial; (3) could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. State v. Hawkins
(1993), 66 Ohio St.3d 339, 350 (quoting State v. Petro [1947],148 Ohio St. 505); Dayton v. Martin (1987), 43 Ohio App.3d 87. The decision to grant or deny a motion for new trial on the basis of new evidence is generally within the sound discretion of the trial court and, absent such an abuse, will not be disturbed on appeal.Hawkins, supra, at 350. An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. See Pembaur v. Leis (1982), 1 Ohio St.3d 89; Wise v. OhioMotor Vehicle Dealers Bd. (1995), 106 Ohio App.3d 562, 565; In reGhali (1992), 83 Ohio App.3d 460, 466.
Appellant contends that we should find an abuse of discretion here because Rodriquez's confession would be extremely effective in defeating a wholly circumstantial case. Appellant points out that Long Lam's trial testimony was the linchpin of the prosecution's case. No eyewitness or physical evidence tied him to the murder and no statement, other than those attributed to appellant by Long Lam, linked him to murder.
Upon careful consideration of the record in its entirety, we agree with appellant. Absent the testimony of Long Lam, the evidence supporting appellant's convictions related to the murder of Marscio (and the subsequent, related auto theft) scant. Rather, the evidence was generally limited to testimony that: (1) appellant was the last person seen with defendant alive on the night of the murder; (2) appellant possessed a knife not inconsistent with the wound that killed Marscio; (3) appellant walked two and a half miles to retrieve the knife, which he had left in Brenda Jewell's apartment several days after the murder; (4) appellant tried to implicate Marscio's former roommate early in the police investigation; and (5) appellant exhibited other peculiar behavior in the days following the murder.
Given this factual record, we must agree that the trial court abused its discretion in finding no strong probability that a different result would be reached with respect to the murder charge and those charges directly resulting from the offense on that date. There is a strong probability of a different result if this new evidence, either from Ospina or the declarant himself, were admitted in a second trial. The trial court erred in finding to the contrary.
Appellant's second assignment of error is sustained.
We note that the level of proof presented at trial on the murder charge and auto theft charge is far different from the proof presented in regard to the burglary, theft and weapon under disability charges. The proof of involvement with the murder and auto theft charges came almost entirely from Long Lam, the person who is implicated in the confession given by Tomas Rodriquez. If Long Lam was perjuring himself to conceal his involvement in the murder, virtually no evidence remains to indicate Camilo Lopez Alvarez was involved in the homicide and auto theft.
On the other hand, significant independent evidence indicates that Camilio Lopez Alvarez was involved in taking several items from Long Lam's apartment. Our ruling in regard to the necessity for a new trial on the murder and auto theft charges does not entitle Mr. Alvarez to a new trial on the burglary, theft and weapon under disability charges which involved a different date and a different location. Mr. Alvarez is entitled to a new trial on the murder and auto theft charges only. Our ruling on the first and second assignments of error sustains the assignment of error only to that extent.
Our rulings above render the third and fourth assignments of error moot insofar as they pertain to the murder and auto theft charges. See App.R. 12. Given the independent evidence of the guilt of Carmilo Lopez Alvarez on the other charges, the trial court correctly denied a new trial on those charges. The third and fourth assignments of error are overruled as they pertain to the burglary, theft and weapon under disability charges.
In summary, the first and second assignments of error are sustained to the extent indicated herein. The third and fourth assignments of error are overruled. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part, and cause remanded.
DESHLER, J., concurs.
LAZARUS, P.J., dissents.