DECISION.
{¶ 1} Defendant-appellant Kendall D. White appeals the denial of his motion for a new trial. In 1996, a jury found White guilty of felonious assault for the beating of Anthony Brooks, for which White received a sentence of 10 to 15 years in prison. White directly appealed his conviction, which this court affirmed in 1997. After serving over six years of his sentence, White moved for a new trial. With his motion, White filed the affidavits of two men also convicted for the beating of Brooks. The affidavits of both men claimed that White had not participated in the beating. The trial court denied the motion. We affirm.
 {¶ 2} The facts of the underlying felonious assault were summarized in this court's 1997 decision as follows: "In the late night/early morning hours of November 24, 1995, Anthony Brooks ("Brooks") was visiting his family in Cincinnati for Thanksgiving. Brooks was a resident of Florida. Brooks met Mary Richardson ("Richardson") at the home of a friend who was having a party. Brooks and Richardson began to talk, and Brooks agreed to help Richardson obtain some crack cocaine, and in return, Richardson would have sex with Brooks. Brooks and Richardson then went to the apartment of one Lois Hale, located at 3330 Woodburn Avenue, in the neighborhood of Evanston. Lois Hale had guests at her apartment including the co-defendant, Edward "Big G" Scott. At trial, Richardson testified that both Scott and White had sold her crack in the past. Richardson went up to the third floor to Lois Hale's apartment and asked for Scott, while Brooks waited on the stairs below. Richardson testified that after she took a hit of crack, she and Brooks had a fight because she no longer wanted to have sex with him. Because she was standing on the edge of the stairs, Richardson lost her balance and fell down the stairs. When she got up she saw Scott and White, and a few other men, kicking and punching Brooks outside.
 {¶ 3} "Two other witnesses, Brenda Bachelor and Ruby Currie, testified that they saw some men kicking, beating and smashing Brooks's head against the ground. Neither Bachelor nor Currie was able to identify any of the attackers other than to say they were in a group of black males.
 {¶ 4} "Lois Hale also testified that she saw both White and Scott hit Brooks, and that White kicked Brooks hard enough to hurt him. The paramedics were called and Brooks was transported to University Hospital. Brooks remained at University Hospital and was eventually transferred to several other hospitals and rehabilitation centers over the next several months."[1]
 {¶ 5} White argued at his trial that he was not one of the men who had assaulted Brooks. Si Coleman, another witness to the beating, testified that White was not a participant in the beating. He testified that White walked by the scene with an unidentified person after the beating had begun, but that White never came near the person being beaten. White's girlfriend also testified that White was with her that evening, and that as they were walking back to her residence, they saw Brooks lying in the street, but that White went nowhere near the victim.
 {¶ 6} The others charged with White for Brooks's beating, Edward "Big G" Scott and Reco Williams, both claimed the protection of the Fifth Amendment and did not testify at White's trial. White attempted to admit into evidence two statements Williams had made to the police that supported White's contention that he had come upon the scene after the beating was over. The trial court correctly ruled that the statements were not admissible as exceptions to the hearsay rule for statements against interest.[2]
 {¶ 7} In his motion for a new trial, White presented new affidavits from Scott and Williams that exonerated White. Both Scott and Williams claimed in their affidavits that they were present during the entire assault on Brooks and that White was not a participant in the beating. Williams claimed that White arrived on the scene after the assault was completely over. White argues, under Crim.R. 33(A)(6), that he should have been granted a new trial based on this newly discovered evidence that he could not have discovered and produced at the trial.
 {¶ 8} Whether to grant a new trial based on newly discovered evidence rests within the trial court's discretion.[3] A trial court abuses its discretion in granting a new trial if the standards set forth in State v. Petro[4] are not satisfied.[5]
 {¶ 9} In Petro, the Ohio Supreme Court stated that to warrant the granting of a motion for a new trial in a criminal case, based on newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.[6]
 {¶ 10} After reviewing the record, including the original trial transcript and the pleadings and affidavits in White's motion for a new trial, we conclude that the trial court did not abuse its discretion in finding that the requirements of Petro were not all satisfied.
 {¶ 11} White's argument for a new trial based on newly discovered evidence failed to meet the requirements of Petro in at least two ways: (1) the evidence was merely cumulative, and (2) there was not a strong probability that the evidence would have changed the result if a new trial was granted.
 {¶ 12} In White's trial, the state offered the testimony of both Richardson and Hale, which showed that White had participated in the beating of Brooks and had kicked him hard enough to hurt him. White offered the testimony of two witnesses who said that he had not participated in the beating and had arrived at the scene later. The affidavits of Scott and Williams, in essence, bolstered the unsuccessful argument made by White at his trial — that he was not present during the assault and came upon the incident only after it was over. The affidavits did not offer any new or distinct arguments and did not allege any new facts. They were clearly merely cumulative to former evidence.
 {¶ 13} White argues that the new evidence was not merely cumulative and truly shed new light on the events of that evening, because Williams and Scott were the best witnesses of who was involved in the assault. But neither Williams nor Scott actually confessed to the assault in their affidavits. Both claimed that they were merely present at the incident in which several men had beaten Brooks. As both Williams and Scott were only coming forward as additional witnesses to the beating, they did not offer any special insight or knowledge. And because Scott and Williams were not incriminating themselves or in any way bringing negative consequences upon themselves, their testimony should not have been deemed any more credible than the testimony of others.
 {¶ 14} The situation now is just as it was at White's trial — there are witnesses who claim White participated in the beating, and witnesses who claim he did not. The new evidence is merely cumulative to evidence already offered at the trial.
 {¶ 15} Along the same lines, White argues that the new affidavits will clearly change the result if a new trial is granted. White argues that the compelling testimony of Scott and Williams "would be accorded great credibility by a jury," and, coupled with the state's weak evidence, would likely change the outcome. White points out that the two witnesses whose testimony implicated White were "crackheads" and that they contradicted each other.
 {¶ 16} But, as the trial court noted in its denial of a new trial, "Now, years later, at no hazard to themselves, the affiants state that White was not involved in the felonious assault of which he has been convicted. The Court believes that the testimony of Lois Hale and Mary Richardson, as recited above, was forceful and convincing, and the jury verdict of guilty corroborates that observation. Although, it is possible that the testimony of affiants Williams and Scott might, at a new trial, change the result to `not guilty', this Court cannot reach the conclusion that such a change of result is a strong probability. It is a possibility and nothing more."
 {¶ 17} We agree. A jury has already considered the conflicting testimony and two versions of White's participation. It determined that White participated in the beating. We are not convinced that there is a strong probability that a new jury listening to the additional testimony of Scott and Williams would reach a different determination.
 {¶ 18} Because all six requirements of Petro must be met to warrant a new trial, the failure to meet two of the elements mandated the denial of White's motion. It is, therefore, unnecessary for us to discuss the remaining elements of the Petro test.
 {¶ 19} Accordingly, we overrule White's assignment of error and hold that the trial court did not err in denying White's motion for a new trial. The trial court's judgment is, accordingly, affirmed.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See State v. White (June 25, 1997), 1st Dist. No. C-960506.
[2] Id.
[3] See State v. LaMar, 95 Ohio St.3d 181, 202, 2002-Ohio-2128,767 N.E.2d 166.
[4] State v. Petro (1947), 148 Ohio St. 505, 76 N.E.2d 370.
[5] See State v. Hawkins (1993), 66 Ohio St.3d 339, 350,612 N.E.2d 1227.
[6] See State v. Petro, supra, syllabus.