[Cite as *State v. Donley*, 2024-Ohio-5508.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30120 |
| | : | |
| v. | : | Trial Court Case No. 2014 CR 01142 |
| | : | |
| ISREAL DONLEY | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 22, 2024

. . . . . . . . . . .

ISREAL DONLEY, Pro Se Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Isreal Donley appeals from a judgment of the Montgomery County Court of Common Pleas that denied his motion for a new trial without a hearing. For the reasons that follow, the judgment of the trial court will be affirmed.

I.      Facts and Procedural History

{¶ 2} The following facts are taken from our opinion in *State v. Donley*, 2022-Ohio-4003 (2d Dist.) (*Donley III*). On March 26, 2014, Detective Patrick O'Connell of the Montgomery County R.A.N.G.E. Task Force observed a suspected drug transaction between the resident of a home occupied by a known drug dealer and the driver of a white GMC Yukon, who was later identified as Donley. Det. O'Connell informed his fellow task force member, Deputy Frederick Zollers, of the transaction and advised Dep. Zollers that the Yukon had very dark window tint. After the Yukon left the residence, Dep. Zollers initiated a traffic stop based on the window tint and ran Donley's identification information through his computer system. In doing so, Dep. Zollers learned that the vehicle was registered to Donley's wife, Alma, and that Donley had an outstanding warrant from the juvenile court for a child support issue. Dep. Zollers thereafter arrested Donley pursuant to the warrant and called for a canine unit to do a sniff of the vehicle.

{¶ 3} Within a few minutes, Deputy Joseph Caito arrived at the scene with his canine. Dep. Caito walked his canine around the vehicle, and the canine alerted to the odor of drugs at the area between the front and rear driver-side doors of the vehicle. Thereafter, Dep. Caito terminated the drug sniff, returned his canine to his cruiser, and assisted Dep. Zollers with searching the interior of the vehicle. The search, however, did not yield any drugs.

{¶ 4} Because Donley had been arrested and had been the sole occupant of the vehicle, Dep. Zollers had Donley's vehicle towed. Before the tow truck driver drove away with the vehicle, a man who identified himself as Donley's brother asked if he could get something out of the vehicle. Because the vehicle was being impounded by the police,

the tow truck driver did not let the man retrieve anything out of the vehicle.

{¶ 5} At the tow yard, the tow truck driver attempted to start Donley's vehicle so that he could put it in a parking spot, but the vehicle would not start. The tow truck driver then looked under the hood of the vehicle to see if there was a mechanical problem. Under the hood, the tow truck driver found a gun and a magazine inside a brown, wool-knit hat that was lying on top of the vehicle's battery. The tow truck driver also discovered that the battery had a loose connection.

{¶ 6} After finding the gun and the magazine, the tow truck driver contacted the sheriff's office. The sheriff's office then sent an evidence technician to the tow yard. While the evidence technician was collecting evidence related to the gun, a tow yard employee, "out of curiosity," flipped open the vehicle's gas tank lid and observed a pair of brown jersey gloves wadded up on top of the gas cap. The evidence technician told the employee not to touch the gloves and then removed the gloves himself. In doing so, the evidence technician found inside one of the gloves a baggie containing a white powdery substance that tested positive for cocaine.

{¶ 7} The jury considered the foregoing information and found Donley guilty of possession of cocaine and having weapons while under disability. The trial court then held a joint sentencing hearing during which it sentenced Donley for these offenses and for offenses in Montgomery C.P. Nos. 2014-CR-2391 and 2014-CR-3312. The trial court imposed a ten-year prison term for possession of cocaine and a concurrent three-year prison term for having weapons while under disability. The trial court ordered the resulting ten-year prison term to be served concurrently to a 36-month prison term imposed in Case

No. 2014-CR-2391 and consecutively to a 36-month prison term imposed in Case No. 2014-CR-3312. Donley was therefore sentenced to an aggregate term of 13 years in prison.

{¶ 8} Donley appealed from his convictions. In doing so, he raised several assignments of error, including that his convictions for possession of cocaine and having weapons while under disability were not supported by sufficient evidence and were against the manifest weight of the evidence. On February 17, 2017, this court affirmed Donley's conviction for possession of cocaine but vacated his conviction for having weapons while under disability on grounds that there was insufficient evidence to establish that Donley knowingly possessed the gun that was discovered in his vehicle. *State v. Donley*, 2017-Ohio-562 (2d Dist.).

{¶ 9} Two years later, Donley filed a "Motion for Final Appealable Order" wherein he challenged the post-release control sanctions imposed by the trial court at his joint sentencing hearing. The trial court denied the motion and Donley appealed. On appeal, we found that the trial court had misstated the post-release control sanctions imposed in Case Nos. 2014-CR-2391 and 2014-CR-3312, but we found no error in the post-release control sanction imposed in the instant case. *State v. Donley*, 2020-Ohio-391 (2d Dist.).

{¶ 10} In August 2021, more than six years after his conviction, Donley filed a petition for post-conviction relief pursuant to R.C. 2953.21. In the petition, Donley argued that he had been denied his constitutional rights to a fair trial and confrontation because he had been unable to confront and attack the credibility of one of the State's witnesses, Dep. Caito, using certain criminal activity and misconduct in which Dep. Caito had

engaged near the time of Donley's trial. The criminal activity was Dep. Caito's 2017 fourth-degree-felony grand theft conviction for stealing money from a local police union between 2014 and 2016.

{¶ 11} Donley argued that the detective's criminal activity would have been admissible at trial for purposes of attacking the veracity and credibility of Dep. Caito's testimony and claimed that the new evidence would have "shifted the balance of justice" in his favor had it been presented to the jury. Donley acknowledged that Dep. Caito's criminal activity had not been discovered until after his trial, but he still argued that he should not have been deprived of his right to confront a witness.

{¶ 12} The trial court overruled Donley's petition, finding that evidence of Dep. Caito's legal troubles would not have been admissible under Evid.R. 404(B). On appeal, we affirmed, noting that a witness credibility challenge is insufficient to demonstrate, by clear and convincing evidence, that "no reasonable factfinder would have found the petitioner guilty of the offense." *Donley III,* 2022-Ohio-4003, at ¶ 25. We also stated that Donley's suggestion that the verdict would have been in his favor had Dep. Caito's credibility been challenged was pure speculation. *Id.* at ¶ 26.

{¶ 13} On December 15, 2023, Donley filed a motion for leave to file a delayed motion for a new trial. The motion stated that a family member had discovered evidence that called into question the credibility of Dep. Caito, specifically that he had been convicted of theft in 2017. It also noted that the deputy had received a "Letter of Caution" for alleged misconduct. The trial court overruled Donley's motion, finding that he had previously raised the issue in his petition for post-conviction relief that had been

considered and overruled in December 2021. Accordingly, the court found that "further consideration of this issue is precluded by the doctrine of res judicata."

**{¶ 14}** Donley has appealed, raising two assignments of error.

## II.      Unavoidable Delay

**{¶ 15}** In his first assignment of error, Donley contends that the trial court abused its discretion when it determined that he "was not unavoidably delayed from discovering information which the State did not disclose in Violation of his 4th and 14th Amendment Rights[.]" Appellant's Brief at 6. He seems to argue that the State should have told him that one of its witnesses, Dep. Caito, had been disciplined at work for turning off his in-car and on-person recording devices to threaten a person in the back of his cruiser and that he had been convicted of theft.

**{¶ 16}** According to Crim.R. 33, a new trial may be granted on motion of a defendant when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. Crim. R. 33(A)(6). This must be done within 120 days of the verdict, and if not, a defendant "must first file a motion for leave, showing by clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion." *State v. Stevens*, 2010-Ohio-556, ¶ 10 (2d Dist.). A person is unavoidably prevented from filing if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of its existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *State v. Bethel*, 2022-Ohio-783, ¶ 21. The decision whether to grant a new trial on account of newly discovered evidence falls within the

sound discretion of the trial court. *State v. LaMar*, 2002-Ohio-2128, ¶ 85.

{¶ 17} To decide this case, however, it is not necessary to analyze whether a new trial should have been granted because it was foreclosed by the doctrine of res judicata. "Pursuant to the doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Reed*, 2015-Ohio-3051, ¶ 26 (2d Dist.), quoting *State v. Collins*, 2013-Ohio-3645, ¶ 9 (2d Dist.). *Accord State v. Hatton*, 2013-Ohio-475, ¶ 16 (4th Dist.) ("[R]es judicata bars a motion for a new trial when the movant raised, or could have raised, that issue, in a prior action."). "[T]he doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *State v. Saxon*, 2006-Ohio-1245, ¶ 18.

{¶ 18} Donley filed a petition for post-conviction relief in August 2021 in which he argued that his constitutional rights had been infringed because he was unable to confront and attack the credibility of Dep. Caito using the criminal activity and professional misconduct in which he had engaged. He cited Dep. Caito's 2017 conviction for grand theft and the "Letter of Caution" he received from his employer and argued that, had this evidence been available to him at trial, the outcome would have been different. Both the trial court and this Court rejected that argument.

{¶ 19} Donley makes the same arguments now, just in the context of a motion for a new trial instead of a petition for post-conviction relief. Thus, res judicata acts as a bar

to consideration. But even if consideration were not barred by res judicata, the motion would be unsuccessful.

{¶ 20} To grant a new trial on the ground of newly discovered evidence, the court must find that the new evidence discloses "a strong probability that it will change the result if a new trial is granted" and cannot be "merely cumulative to former evidence." *LaMar* at ¶ 85, quoting *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993). *Accord State v. Ayers*, 2022-Ohio-1910, ¶ 116 (5th Dist.). In considering this same argument in *Donley III*, we noted that Donley's claim that the jury's verdict would have shifted in his favor had he been able to challenge Dep. Caito's credibility using the criminal activity in question and the "Letter of Caution" was "purely speculative." *Donley III* at ¶ 26. We also reasoned that Caito's credibility would not have made a difference in the trial because the deputy played such a small role in the case. Dep. Caito simply responded to the stop to have his canine partner conduct a free-air sniff. While he assisted with the search of the car's interior, no drugs were found there, and he was not present when the drugs were discovered. As we stated the last time we considered this issue, "[g]iven Dep. Caito's limited role in the case, we fail to see how attacking his credibility in the manner proposed by Donley would have affected the jury's verdict." *Id.* at ¶ 27.

{¶ 21} The trial court did not abuse its discretion by overruling Donley's motion for leave to file a delayed motion for a new trial. The first assignment of error is overruled.

### III.    Evidentiary Hearing

{¶ 22} In his second assignment of error, Donley claims that the trial court abused its discretion in failing to hold an evidentiary hearing. This argument, though, is defeated

by res judicata as well: there could be no consideration of a hearing because the motion itself was barred by res judicata. The second assignment of error is overruled.

### IV. Conclusion

**{¶ 23}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and TUCKER, J., concur.