OPINION
Defendant-appellant, Traci Southerland, appeals her conviction for passing a bad check and theft following a bench trial in the Butler County Court of Common Pleas. For the reasons that follow, we modify the judgment entry and affirm.
On August 18, 2000, appellant called her credit union, the Cincinnati Postal Employees Credit Union, and reported that some of her checks had been stolen. On the morning of August 21, 2000, appellant went to the Hamilton County office of her credit union to decipher, with the help of Lisa Christoff, the member services manager, which checks had been stolen so that they could have a stop payment placed on them. However, appellant did not have any of the checks that were not stolen with her so that she and Christoff could decipher which ones to stop. Therefore, appellant stated that she would call back later with those numbers. Appellant further maintained that she filed a police report and would not be able to obtain a copy for ten days. Christoff placed an alert on appellant's account.
That afternoon, Deputy Statzer of the Hamilton County Sheriff's Office, District 1 was called to aid a clerk when appellant attempted to leave a Hamilton County Home Depot without purchasing the item in her cart. Statzer directed appellant back in, and she wrote a check for the item and then left the store. The clerk wrote appellant's driver's license number on the check. A few minutes later, the clerk came out to Statzer and told him that appellant's checks were reported stolen. Statzer found appellant in a nearby parking lot where he looked at appellant's driver's license to confirm her identification. Appellant explained that she found the checks that she had reported stolen, but had not called the credit union yet. Statzer asked appellant to call the credit union so that he could confirm the story. Statzer verified with Christoff that they were speaking of the same person and that there were sufficient funds in the account to cover the written check. Statzer released appellant, since he believed that no crime had been committed.
Around 4:00 p.m., appellant called the credit union and she and Christoff determined which series of checks should be stopped. Two days later, appellant informed Christoff that two checks cleared that she did not write, so appellant stopped payment on that series of checks too. The check written to Home Depot was in that series.
On August 28, 2000, appellant and a male companion bought $1,441.13 worth of furniture at the Oak More located in West Chester Township, Butler County, Ohio. Appellant wrote a check for the full amount from the reported stolen series of checks. The credit union stopped payment on the check and returned it to Oak More. Oak More attempted to reach appellant at the phone number listed on the check and left a message, but appellant never called back.
Officer Oakes of the West Chester Police Department investigated the bad check at Oak More. The store clerk who waited on appellant picked two photos out of a photo array as possibly being the individual who wrote the check. Ten to fifteen minutes later, the clerk pointed to the photo of appellant as definitely being the person who purchased the furniture. On three later occasions, the clerk saw and identified appellant as the purchaser of the furniture: (1) inside the police department sitting among a group of people, (2) outside the police department with another gentleman, and finally (3) in court.
Oakes spoke with appellant during his investigation, and she told him that her checks had been stolen and that she had filed a police report. Oakes found that no report had been filed. Appellant later claimed that she attempted to file a report, but was told she was in the wrong district, so her attorney said he would take care of filing the report. Appellant did tell Oakes that she heard from Statzer that a woman at Home Depot attempted to cash her stolen checks. Oakes spoke with Statzer and Statzer pointed out appellant from the photo display as the woman who had written the check at Home Depot. Oakes then confirmed with Christoff that appellant stopped payment on both checks.
Christoff also related to Oakes that an anonymous caller stated that a Frances McDaniels had written the Home Depot check. The caller stated further that if a specified phone number were looked up, one would find the Oak More furniture at that residence. Upon inquiry by Oakes, McDaniels denied writing the check and said that she and appellant had written bad checks together before. Oakes found the residence of the phone number and he knocked on the door, but no one answered. It was the residence of appellant's boyfriend. Oakes felt that he did not have enough evidence to obtain a search warrant for the residence.
A photo of McDaniels was shown to both Statzer and the Oak More clerk, both of whom stated she was not the one whom they had seen when the checks were written.
Appellant was charged and convicted by bench trial of one count of theft and one count of passing a bad check. Before her sentencing hearing, appellant hired another attorney to argue a motion for a new trial. Appellant claimed that McDaniels admitted to her that she had written the checks. Also, appellant had two witnesses who claimed McDaniels told them that she wrote the checks. The trial court found that the witnesses' evidence was inadmissible hearsay. Further, the trial court found that appellant had prior knowledge of McDaniels and could have subpoenaed her to testify at trial.
Appellant was sentenced to eleven months in jail and a $500 fine for the theft conviction and a concurrent eleven-month sentence for the passing a bad check conviction. Appellant now appeals raising four assignments of error.
Assignment of Error No. 1:
 THE FINDING OF GUILT IN THE CASE SUB JUDICE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
In her first assignment of error, appellant argues that her convictions for theft and passing a bad check are against the manifest weight of the evidence. Specifically, appellant contends the identification of her by the Oak More clerk through a photo array was erroneous, the signatures on the checks and the credit union signature card were not the same, the anonymous call was not fully investigated, and appellant did attempt to fill out a police report for the alleged stolen checks.
A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56, 59. The standard the court follows for determining reversal for manifest weight of the evidence is summarized as:
 The court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence whether the [trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387 quoting State v.Martin (1983), 20 Ohio App.3d 172. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant first questions her identification by the Oak More clerk as the writer of the check for the furniture. Reliability of a witness' identification must be determined by looking to see if the police used unnecessarily suggestive procedures and whether the identification was unreliable under the totality of the circumstances. State v. Poole
(1996), 116 Ohio App.3d 513, 522, citing Neil v. Biggers (1972),409 U.S. 188, 93 S.Ct. 375. Factors that are relevant to the totality of the circumstances inquiry include: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of the witness' certainty at the confrontation; and (5) the length of time between the crime and the confrontation. Id.
In the present case, the clerk spent time personally waiting on appellant. Appellant wrote the check in her presence. When the clerk first saw the photo array, she identified appellant and another individual. However, a few minutes later, she unequivocally identified appellant. The clerk also identified appellant sitting in a full lobby at the police station. She identified appellant once again outside the police station. Finally, she clearly identified appellant in court as the check writer. Thus, because the clerk spent time personally with appellant and identified her on four separate occasions, the clerk had an independent recollection of appellant.
Appellant also argues that the signature on her credit union signature card differs from those on the checks, inferring that she did not write the checks. Oakes, a non-handwriting expert, testified that the signatures on the two checks were similar, but that the signature on the credit union signature card looked different. However, Statzer specifically identified appellant from the photo array as the check writer at Home Depot. Statzer had also looked at appellant's driver's license on the day in question. Appellant's driver's license number was written on the Home Depot check. The clerk unequivocally identified appellant as the check writer at Oak More.
Appellant's argument that the police did not fully investigate the anonymous call to the credit union is without merit. Oakes followed up on all of the information by speaking with McDaniels and ascertaining the residence of the phone number given. Oakes used his professional judgment that he did not have enough evidence when deciding not to pursue obtaining a search warrant for the residence.
Appellant's final claim that she did try to file a police report is also without merit. The veracity of her testimony is within the trial court's discretion to determine. The trial court is in the best position to judge the credibility of witnesses.
After reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we find that the trial court did not lose its way in finding appellant guilty of theft and passing a bad check. There was substantial evidence for the trial court to determine beyond a reasonable doubt that appellant had committed the offenses. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY REFUSING TO GRANT THE MOTION FOR A NEW TRIAL WHICH WAS TIMELY FILED BY DEFENDANT
In her second assignment of error, appellant contends that the trial court erred by denying her motion for a new trial. Appellant now wishes to offer the testimony of two individuals who would testify that McDaniels told them that she wrote the checks. Further, appellant wishes to testify that after the trial, McDaniels confessed to appellant that she wrote the checks.
Pursuant to Crim.R. 33, a new trial may be granted "* * * when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *." Crim.R. 33(A)(6). A new trial is not warranted on the basis of newly discovered evidence unless it is shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence and (6) does not merely impeach or contradict the former evidence. State v. Hawkins (1993), 66 Ohio St.3d 339, 350, quoting Statev. Petro (1947), 148 Ohio St. 505. Further, the decision to grant or deny a motion for a new trial on the basis of newly discovered evidence is within the competence and discretion of the trial judge, and, absent a clear showing of abuse, the decision will not be disturbed. State v.Williams (1975), 43 Ohio St.2d 88, paragraph two of syllabus.
The trial record clearly exhibits that appellant knew of McDaniels before the trial. McDaniels' name is mentioned many times in the record. Appellant even admitted to having known McDaniels for over twenty years. The trial court stated, "this is evidence which, as I say, kept coming up during the trial so it was discovered and she could've been subpoenaed into court during the course of the trial * * *." In fact, as stated earlier, appellant cross-examined Oakes about an anonymous person calling the credit union stating that McDaniels had written the Home Depot check, and that they knew where the Oak More furniture was located. Appellant could have subpoenaed McDaniels and compelled her to testify. The new testimony being proffered by the new witnesses that McDaniels confessed writing the checks to them is merely cumulative as well as hearsay. Further, appellant has failed to show that if this evidence were admitted, it would have changed the result of her trial. There was substantial evidence through identification testimony that appellant committed the offenses. The trial court did not abuse its discretion in denying appellant's motion for a new trial. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
 Appellant contends that she was denied the effective assistance of counsel because her attorney did not step down in order to proffer testimony that appellant had in fact attempted to file a police report on her stolen checks. Appellant maintains that this testimony would have bolstered her own testimony as well as provided substantiation that her checks were in fact stolen. Also, appellant argues that her counsel should have called other witnesses to testify on her behalf.
"An attorney's failures to object and to subpoena witnesses are within the realm of trial tactics and do not, absent a showing of prejudice, deny a defendant effective assistance of counsel." State v. Hunt (1984),20 Ohio App.3d 310, syllabus. Appellant must overcome the strong presumption that, under the circumstances, counsel rendered adequate assistance and that the challenged actions might be considered sound trial strategies. State v. Smith (1985), 17 Ohio St.3d 98, 100. To establish a claim, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,2064. Appellant shows prejudice by proving that there was a reasonable probability that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Appellant's counsel was not required to automatically withdraw so that he could testify as a witness. Mentor Lagoons, Inc. v. Rubin (1987),31 Ohio St.3d 256, paragraph two of the syllabus. Instead, once an attorney representing a litigant in a pending case requests to testify, the court must first determine whether the testimony is admissible and, if it is so found, then the court upon request will determine whether the attorney may testify and represent appellant in reference to the Code of Professional Responsibility DR 5-102 exceptions. Id.
In this matter, the attorney's testimony would only possibly have bolstered appellant's testimony by stating that he had failed to file the police report for appellant regarding her stolen checks and that she had attempted to file the report herself. Appellant believes that this lack of testimony by her attorney was a deficiency that caused her to be prejudiced. The attorney's testimony could have potentially bolstered appellant's credibility. Her credibility was put into question by the prosecution. As a matter of trial tactics, her attorney decided not to testify on her behalf. However, her attorney's failure to testify did not cause her any prejudice. There was ample evidence presented at trial for the trial court to find appellant guilty. Thus, in this situation, the attorney's lack of testimony to bolster appellant did not cause her to have the ineffective assistance of counsel.
Further, appellant believes that this testimony would provide substantiation for her contention that her checks were stolen. As the trial court noted to appellant, a good way to "cover your tracks" is to "report checks stolen first of all then pass the check because you got a perfect * * * reason. * * * There's probably a seven or eight day leeway between the time that the check is passed and the time it gets back saying payment was stopped on the check or the account was closed. So as called kiting time that's in there[,] and that's a good scheme." Thus, the attorney's testimony would not necessarily have proven or even potentially bolstered appellant's contention that her checks were stolen.
Moreover, the attorney could have testified if he had chosen to do so, potentially without stepping down as appellant's counsel. Only after the attorney had determined that he would testify would the court even look at whether he should withdraw. Withdrawal as counsel is not a precursor to testifying. Appellant was not prejudiced by her attorney's failure to testify to bolster her testimony. Thus, the appellant did not have ineffective assistance of counsel regarding her attorney's potential testimony.
It was within the attorney's choice of trial tactics when he decided not to call other witnesses in appellant's defense. The testimony of the potential witnesses that appellant mentions in her brief constituted inadmissible hearsay. At the hearing on the motion for a new trial, neither defense counsel nor the trial court could think of an exception to allow the hearsay's admission. The attorney's failure to call other defense witnesses did not prejudice appellant. Thus, appellant had the effective assistance of counsel. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED BY IMPOSING FINES OR COSTS IN THE CASE SUB JUDICE
 The trial court, in its judgment entry, ordered appellant to pay "* * * all costs of prosecution, counsel costs and any fee permitted pursuant to Revised Code Section 2929.18 (A)(4)." Further, the trial court ordered appellant to pay a financial sanction of $500 for her theft conviction pursuant to R.C. 2929.18(3)(e). Appellant contends that the trial court erred by imposing the financial sanction and ordering her to pay the costs of prosecution without first making a determination of her present and future ability to pay. Appellant also maintains that she was found to be indigent during a later court hearing.
Pursuant to R.C. 2947.23, "in all criminal cases, * * * the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." Based on the plain language of the statute, we find that the trial court properly assessed the costs of prosecution against appellant.
The trial court erroneously ordered appellant to pay "counsel costs" in its judgment entry order. Appellant did not obtain court-appointed counsel, but retained her own counsel for the trial. We find that the sentencing entry is not as precise as it should be. Therefore, pursuant to App.R. 12(B), we hereby modify the June 26, 2001 judgment entry to reflect that change by removing the words "counsel costs" from the judgment entry order.
R.C. 2929.18 permits the trial court to impose financial sanctions on felony offenders. Before it imposes a financial sanction though, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). However, there are no express factors that must be considered or specific findings that must be made. State v. Adkins (2001), 144 Ohio App.3d 633, 647. R.C. 2929.19(B)(6) does not require the trial court to hold a hearing, although it may choose to do so pursuant to R.C. 2929.18(E). All that R.C. 2929.19(B)(6) requires is that the trial court consider the offender's present and future ability to pay. State v. Martin (2000),140 Ohio App.3d 326, 338. Even a finding that a defendant is indigent for the purpose of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001),145 Ohio App.3d 277, 283.
During the sentencing hearing, the trial court ordered appellant to pay a $500 fine for her theft conviction. Defense counsel stated for the record that an affidavit of indigency had been filed; however, the court noted that it had not been filed. On a review of the court records, we found that the affidavit had not been filed until after the sentencing hearing and so the trial court did not have it to consider when ordering payment of the financial sanction. The trial court noted that appellant had hired an attorney to argue her motion for a new trial. Also, the trial court had asked for and received a presentence investigation report for its consideration in sentencing.
With these facts in mind, we believe that the trial court did consider appellant's present and future ability to pay. The statutory language does not call for any specific findings or express factors to be considered. The trial court considered all of the documents that it had before it as well as the fact that appellant had retained counsel for an earlier motion. Further, just because appellant has now been declared indigent and has appointed appellate counsel does not mean that she will not have the future ability to pay the fine. Thus, we find that the trial court did not abuse its discretion in ordering appellant to pay a financial sanction. Appellant's fourth assignment of error is overruled with modification.
Judgment affirmed as modified.
WALSH, P.J., and VALEN, J., concur.