OPINION
{¶ 1} Howard Thomas Hoffman, III, ("appellant), appeals the Jan. 24, 2001 judgment of the Lake County Court of Common Pleas denying his motion for a new trial made pursuant to Crim.R. 33(A)(6). For the following reasons, we affirm the decision of the trial court in this matter.
 {¶ 2} Laura and Howard Hoffman, II, appellant's parents, were shot and killed in their own home and subsequently set on fire in a brutal double homicide on March 14, 1972. On June 14, 1972, appellant was indicted on two counts of premeditated murder, in violation of R.C.2901.01. On October 16, 1973, a jury found appellant guilty on both counts. As a result, appellant was ordered to serve two consecutive life sentences in prison for the murder of his parents. After several unsuccessful attempts to gain post conviction relief, appellant filed a Motion for a New Trial on November 29, 2000, approximately 27 years after the original trial had ended.
 {¶ 3} Appellant's motion was based upon alleged newly discovered evidence and made pursuant to Crim.R. 33(A)(6). In the affidavit accompanying his motion, appellant claimed that the prosecution improperly suppressed an Ohio Bureau of Criminal Investigation ("BCI") fingerprint analysis report. The report indicates that several specimens were submitted by the prosecution to BCI for analysis. In that report, BCI indicated that one of the specimens submitted by the prosecution contained partial fingerprints matching those of appellant's wife, Carol Hoffman. On January 24, 2001, the trial court denied appellant's motion, holding that it was untimely filed. The trial court also held that even if appellant had timely filed his motion, the evidence at issue was not newly discovered and thus did not warrant the granting of a new trial. Subsequently, appellant filed this timely appeal. Appellant now asserts the following assignments of error for our review:
 {¶ 4} "[1.] The trial court erred in finding that appellant did not show by clear and convincing evidence that the appellant was unavoidably prevented from timely filing his motion for a new trial.
 {¶ 5} "[2.] The trial court committed reversible error and abused its discretion by denying the appellant's motion for a new trial.
 {¶ 6} "[3.] The trial court committed reversible error, as a matter of law, by assessing costs against appellant."
 {¶ 7} Before proceeding with our analysis, we note that appellant originally filed the notice of appeal in this case, pro se, on February 20, 2001. Appellant then motioned this court to appoint counsel for purposes of this appeal on February 23, 2001. Subsequent to his motion for appointment of counsel, but prior to this court's granting of said motion, appellant attempted to file a pro se brief with this court. Subsequently, on March 14, 2001, this court granted appellant's motion and counsel was appointed to represent appellant in this complicated matter. Once appointed, appellant's counsel proceeded to file a brief with this court on December 5, 2001. We note, that in his brief, appellant's counsel properly included any substantive legal arguments raised by appellant in his pro se brief.[1] Therefore, we will address the primary arguments contained in the brief filed by appellant's counsel, being sure to address any additional, substantive arguments raised by appellant in his pro se brief. Also, as appellant's first and second assignments of error are so closely related, we proceed to address them collectively.
 {¶ 8} The trial court denied appellant's motion for a new trial on two grounds. First, the trial court found that appellant failed to show by clear and convincing evidence that he was unavoidably prevented from timely filing his motion for a new trial. Second, the court found that the evidence would not have strongly affected the outcome of the trial.
 {¶ 9} As to the first issue, appellant argues that he was unavoidably prevented from discovering the evidence prior to the deadline imposed by Crim.R. 33. Appellant also argues that if the trial court had any concerns with appellant's motion, the trial court should have conducted a hearing as outlined in Crim.R. 33(A)(6). The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, syllabus. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466,470. Likewise, "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." State v. Smith (1986),30 Ohio App.3d 138, 139.
 {¶ 10} Crim.R. 33(B) states in relevant part: "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty-day period." Clear and convincing proof "produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v.Mathis (1999), 134 Ohio App.3d 77, 79.
 {¶ 11} The record indicates the trial court never issued an order finding that appellant was unavoidably prevented from discovering the evidence within the one hundred twenty-day period pursuant to Crim.R. 33(B). However, the trial court still accepted, and proceeded to rule upon, appellant's Crim.R. 33 motion for a new trial. In its judgment entry, the trial court found that appellant failed to meet the clear and convincing standard contained in Crim.R. 33(B).
 {¶ 12} In the affidavit attached to his motion, appellant stated that prior to the trial, appellant's counsel had made at least three separate requests to the prosecution for full disclosure of the evidence. On February 6, 1973 the BCI report indicates that specimens were submitted by the assistant prosecutor to BCI for fingerprint analysis. Appellant's counsel made discovery requests on October 10, 1972, February 8, 1973, and July 8, 1973. As the BCI report was not issued until February 12, 1973, appellant's first request was moot, as the prosecution did not yet have possession of the report. However, the record indicates that the prosecution failed to turn over the BCI report in response to appellant's second and third requests for discovery. A review of the trial transcript also shows that while several members of the BCI's fingerprint team testified at trial, no mention was made of the report's existence during the course of their testimony.
 {¶ 13} Appellant's affidavit further states that appellant's former sister-in-law contacted appellant in 1995 and offered to help appellant "right the wrongs of 1972 and 1973." The record indicates that, in 1995, the Arizona firm of Meehan and Associates undertook representation of appellant in a habeas corpus action originally initiated in 1987 in the United States District Court, N.D. Ohio, Case No. 87 CV 7130. Subsequently, in 1997, discovery was ordered. During the discovery phase of that action, appellant claims that Meehan and Associates obtained documents from the Lake County Prosecutor's office and the Mentor Police Department. Appellant then claims he received a copy of the BCI report in "early Fall, 2000." The record indicates that appellant filed his motion for a new trial based on newly discovered evidence on November 29, 2000.
 {¶ 14} In its judgment entry denying appellant's motion, the trial court stated that "Hoffman states that this evidence surfaced during discovery ordered in a federal habeas corpus action * * * that he filed on February 17, 1987. He provides no explanation why he failed to act on this newly discovered evidence since then." After reviewing appellant's affidavit, we disagree with the trial court's accuracy in interpreting the sequence of events listed in appellant's affidavit. Appellant does not state in his affidavit that he was aware of, or had received, a copy of the BCI report in 1987. In his affidavit, appellant states that he "raised the issue of my council's (sic) failure to act upon information implicating Carol Anne Hoffman in the murders when initiating a post conviction relief action in 1978. I continued that issue when initiating a habeas corpus action in 1987." Appellant does not state, and the record does not support, the trial court's claim that appellant was aware of the BCI report at any time during the course of those post conviction proceedings. Indeed, if appellant were trying to exonerate himself, it would make sense that appellant would most certainly use a fingerprint report incriminating someone besides himself in his efforts for Post Conviction Relief.
 {¶ 15} The record further indicates that the taking of discovery was not ordered in the habeas corpus action until the fall of 1997. The Arizona law firm of Meehan and Associates undertook this discovery. Appellant claims in his affidavit that, once the habeas corpus action had been reopened, the discovery process led to the revelation of the BCI report in the fall of 2000. Subsequently, appellant filed his motion for a new trial on Nov. 29, 2000. There is nothing on the record that would contradict this sequence of events as outlined in appellant's affidavit. We also note that appellee in this case did not file a brief in opposition to appellant's motion at the trial court level, and as such, offers no evidence to the contrary.
 {¶ 16} Appellant's counsel made several discovery requests prior to the commencement of trial. Furthermore, several BCI agents failed to mention the report in their testimony given at trial. Appellee also had the opportunity to disclose the BCI report during the 1978 post conviction proceeding. However, the BCI report did not surface until discovery was ordered in the habeas corpus action in 1997. Once received in the fall of 2000, appellant quickly filed his motion for a new trial. Based on the record before us, we hold that the trial court abused its discretion in ruling that appellant was not unavoidably prevented from discovering the evidence within the mandated time period under Crim.R. 33(B). We also hold that the trial court did not abuse its discretion in proceeding without a hearing, as the only affidavit included in appellant's motion was his own, and appellee did not file a response to appellant's motion. See, Smith, supra.
 {¶ 17} While we hold that the trial court erred in determining that appellant was not unavoidably prevented from discovering the evidence in question, the issue is actually moot as the trial court proceeded to address the merits of appellant's motion in its judgment entry. As a result, this court is now entitled to address the merits of appellant's motion as well. State v. Johnston (1988), 39 Ohio St.3d 48,59.
 {¶ 18} In his second assignment of error, appellant argues that the newly discovered evidence is sufficient to warrant a new trial under Crim.R. 33(A)(6).
 {¶ 19} Crim.R. 33(A) states that a new trial may be granted on motion of the defendant "when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." Normally, to prevail on a motion for a new trial based upon the grounds of newly discovered evidence pursuant to Crim.R. 33(A)(6), the defendant must establish that the new evidence: "(1) is of such weight that it creates a strong probability that a different result would be reached at the second trial; (2) has been discovered since trial; (3) could not in the exercise of due diligence have been discovered before trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." State v. Hawkins (1993),66 Ohio St.3d 339, 350, quoting State v. Petro (1947), 148 Ohio St. 505, syllabus. A trial court's application of the Petro test is reviewed under an abuse of discretion standard. Johnston, supra, at 60. However, in cases where the newly discovered evidence is claimed to have been suppressed, the reviewing court is to invoke a due process analysis as appellant's Fourteenth Amendment right to a fair trial is at issue. Bradyv. Maryland (1963), 373 U.S. 83, 87; Johnston, supra; State v. Sable
(Feb. 23, 2001), 11th Dist. No. 99-P-0081, 2001 Ohio App. LEXIS 686.
 {¶ 20} Appellant argues that the trial court improperly applied the Petro standard to the evidence in question when it should have engaged in a due process analysis under Brady. We agree with appellant on this issue. When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial. Brady, supra, at 83. Appellant argues that, as a matter of law, his conviction should be reversed as a result of apparent prosecutorial misconduct. However, in cases of alleged prosecutorial misconduct, it has been held that reversal is not required as "a matter of law." See, State v. Cassano,96 Ohio St.3d 94, 2002-Ohio-3751; State v. Evans (1992), 63 Ohio St.3d 231.
 {¶ 21} The suppression by the prosecution of evidence favorable to an accused upon request "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, supra, at 87. Thus, the touchstone issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material. In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v.Bagley (1985), 473 U.S. 667, 682. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." See, also, Pennsylvania v. Ritchie (1987), 480 U.S. 39, 57. The court held that this standard of materiality applies regardless of whether the evidence was specifically, generally or not at all requested by the defense. Id.
 {¶ 22} Appellant argues that the fingerprint report was material and "put the case in a whole new light." Appellant also argues that, had appellant's trial counsel "been aware of the existence of the appellant's ex-wife's fingerprints in the home of appellant's parents, this would have constituted direct evidence of her guilt, * * *." For the following reasons, we disagree with appellant's arguments.
 {¶ 23} During the course of the Lucas County trial, the prosecution presented a substantial amount of physical and circumstantial evidence leading the jury to convict appellant of the crime. The record is clear that at the time of the murders, appellant was in dire financial straits, and stood to inherit approximately $200,000 via various insurance policies upon the death of his parents. The record substantiates this by indicating that while a fire was set in the house, the filing cabinet containing the insurance policies was doused with water.
 {¶ 24} The trial transcript revealed that for most of his adult life, appellant's parents had given him substantial amounts of money in order to help appellant pay for his education and living expenses. Several witnesses at trial then testified that appellant had on three separate occasions suggested various plots to kill his parents upon their failure to provide him with more money. Indeed, one plot eerily included the actual process used in the subsequent killing of appellant's parents. Furthermore, appellant admitted, at his interrogation and at trial, that he gave his wife sleeping pills on the night of the murders.
 {¶ 25} In addition to the circumstantial evidence, further review of the record reveals damning physical evidence as well. During a lengthy audio-taped interrogation with police, appellant was asked if he knew where the gun used in the murders was located. Appellant answered, " I'll tell you, Mr. Stern, where the gun is not. It is not at Dodd and Eagle Road." The record indicates that divers subsequently located the gun used in the murders at the bridge of Dodd Road. Once the gun was located, the police were able to make a ballistics match with the bullets taken from the Hoffman's bodies. In addition, the bullets used in the murders were hollowed out through the use of a knife. At his interrogation, and while testifying on his own behalf at trial, appellant admitted that he hollowed out the bullets used in the murder with a knife from his apartment. Appellant also confirmed that this was done without his wife's knowledge. Investigators later found a knife in appellant's apartment whose blade perfectly matched the grooves created in the bullets used to kill appellant's parents. Appellant also admitted that the gun used to murder the Hoffman's was stored in his personal vehicle, as opposed to his wife's.
 {¶ 26} Finally, an expert from BCI testified that a strand of hair found in a bloody shirt discarded near the scene of the crime matched a hair sample given to police by appellant. The shirt was found to contain the blood of Howard and Laura Jane Hoffman.
 {¶ 27} At this point, all appellant has to offer in contrast to the staggering evidence against him is a fingerprint report showing two partial, latent fingerprints made by his wife. The record indicates that appellant's wife had visited the Hoffman's home on various occasions, and the discovery of a latent print from her hand in the home of her in-laws is one that fails to sway this court. Furthermore, there is no other evidence on the record linking appellant's wife to the crime. Therefore, while we believe it is proper practice for the prosecution to disclose any evidence that is potentially exculpatory, we cannot say that the BCI fingerprint report, when compared to the mountain of evidence assembled against appellant, presents a "close call" as appellant attempts to argue. Based on the record before us, we cannot say that if the defense were in possession of the BCI report at the time of trial, there is a reasonable probability that the outcome would have been different. Therefore, we hold that the evidence presented by appellant fails to put this case in a whole new light so as to undermine the confidence in appellant's conviction
 {¶ 28} As a result, we hold that appellant's first and second assignments of error are not well taken and without merit.
 {¶ 29} In his third assignment of error, appellant argues that the trial court erred in assessing court costs against him in this matter. Appellant claims that court costs should not be assessed against indigents in felony cases. In support of his argument, appellant cites to this court's decision in State v. Heil (Mar. 30, 2001), 11th Dist. No. 2000-G-2268, 2001 Ohio App. LEXIS 1552. After the briefs in this case were filed, the Ohio Supreme Court subsequently vacated this court's decision in Heil. See State v. Heil, 95 Ohio St.3d 531, 2002-Ohio-2841.
 {¶ 30} Appellant claims that he filed an affidavit of indigency along with his motion for a new trial. There is no indication on the record to substantiate appellant's claim. In fact, the trial court stated in its judgment entry that "appellant has not filed an affidavit of indigency and has not provided any details of his financial situation."
 {¶ 31} The denial of a motion to proceed in forma pauperis is reviewed under an abuse of discretion standard. State v. Fair (Sept. 2, 1999), 10th Dist. No. 98AP-1503, 1999 Ohio App. LEXIS 4070. The mere fact that an appellant is incarcerated does not mean that he is indigent.Smith v. Ohio Dept. of Rehab. and Corr. (1995), 107 Ohio App.3d 713. The record indicates that appellant failed to file an affidavit of indigency with the trial court in his motion to proceed in forma pauperis. The local rules of the Lake County Common Pleas Court state in pertinent part: "AFFIDAVIT OF POVERTY. An affidavit of poverty may be filed with the Clerk of Court in lieu of a deposit of security for any pleading seeking affirmative relief." L.C. II(B)(1). The local rules further state that "A party not filing an Affidavit of Poverty in an action shall be required to deposit a security for costs, * * *, for any motion to reopen a case." L.C. II(B)(5).
 {¶ 32} According to the local rules, appellant should have filed an affidavit of poverty along with his motion. The record indicates that appellant failed to provide any details of his financial situation to the trial court, as well as failed to explain why he would be unable to pay his costs. A trial court's denial of a motion to proceed in forma pauperis is not an abuse of discretion when the defendant fails to detail his financial situation. Fair, supra.
 {¶ 33} As appellant failed to detail his financial situation and file an affidavit of poverty/indigency with the trial court, we hold that the trial court did not abuse its discretion in assessing the costs of this action against appellant. As a result, we hold that appellant's third assignment of error is not well taken and without merit.
 {¶ 34} For the foregoing reasons, appellant's first, second, and third assignments of error are not well taken and without merit. The January 24, 2001 decision of the Lake County Common Pleas Court is hereby affirmed.
JUDITH A. CHRISTLEY, J., ROBERT A. NADER, J., concur.
[1] As an aside, this court notes, with disappointment, that both appellant, in his pro se brief, and appellant's counsel, in his appellate brief, fail to cite to the record in their statement of facts. This results in a failure to comply with both App.R. 16(A)(6), (D), and Local Rule 12(A)(1), (C)(3). However, in the interests of justice, we will proceed to examine this matter within the bounds of the rules.