{¶ 1} Defendant-appellant, John E. Peters, Jr. ("defendant"), appeals the decision of the trial court that denied his most recently filed motion for a new trial.
 {¶ 2} The protracted procedural history of this case is as follows: In March 1988, defendant was indicted, along with his wife, for three counts of rape, six counts of gross sexual imposition, and one count of child endangering. All counts involved the couple's daughter, with the date of the offenses spanning a period of three years and beginning when the child was merely six years old.
 {¶ 3} The court file is replete with accusatory motion practice, including motions to compel and a motion to hold defense counsel in contempt of court. The defense maintained that the State withheld exculpatory discovery and the State later maintained that the defense had the records all along. The motions largely focused on the disclosure of psychological, medical, and police reports pertaining to the child victim.
 {¶ 4} The State alleged as follows: "[the defense] spent many hours of the Court's time demanding that they be presented the confidential psychological, medical, and police reports of the rape victim. Later, on the ninth day of trial, the State inadvertantly [sic] learned that the defense attorneys had somehow obtained all the confidential reports before trial when they were observing [sic] showing the materials to others in the hallways. * * *" (R. 30, p. 1). Defense counsel responded that he discovered "an extremely exculpatory document * * * during the cross-examination *Page 4 
of Vera Perkins Hughes [that] was never provided to the defense." (R. 38). The defense detailed a list of documents that were produced, including patient notes from Lila Rosenstein, M.D., and a report from Social Services prepared by Paul DiVencenzo, M.D. Id. Both these individuals testified at trial about their reports and both indicated that the child denied sexual intercourse with her parents.
 {¶ 5} On December 30, 1988, the jury found defendant guilty of two counts of rape, six counts of gross sexual imposition, and one count of child endangering. Defendant is currently serving two life sentences.
 {¶ 6} Defendant has since filed a direct appeal, along with numerous post-trial motions. This Court affirmed defendant's conviction inState v. Peters (June 7, 1990), Cuyahoga App. No. 57063. The Ohio Supreme Court overruled defendant's motion for leave to appeal on October 24, 1990.
 {¶ 7} Defendant's petition for Writ of Certiorari to the United States Supreme Court was denied in April 1991.
 {¶ 8} According to the record, defendant's first motion for new trial was filed by defendant on April 14, 1989, premised on the affidavits of defendant's trial attorney, and affidavits of the co-defendant/victim's mother. On July 5, 1989, the trial court overruled it.
 {¶ 9} Defendant filed another motion for new trial on December 12, 1990, that was also denied. *Page 5 
 {¶ 10} Defendant filed a third motion for new trial on August 9, 1991, premised upon the affidavit of the co-defendant/victim's mother's divorce attorney, another affidavit of defendant's trial counsel, and the victim's affidavit. All affidavits averred that subsequent to defendant's conviction, the victim stated she lied at trial and stated that her father, the defendant, "never raped or sexually molested her in any way." The State opposed the motion with affidavits from Detective Sergeant Roger Murphy, Lori O'Brien (a Geauga County social worker), the victim's maternal grandmother, and the victim, who recanted her recantation. The victim (who was by that time still only 12 years old) explained that she made the recantation "because [she] wanted to please [her] mother. The truth [was that she] was abused by [the defendant], and everything [she] said at trial was the truth." (R. 62). The affidavits offered by the State consistently maintained that the victim was subject to great manipulation by her mother. The affiants, including the victim, maintained that the victim had told the truth at trial and only recanted in an effort to please her mother. The trial court denied the motion for new trial by order dated December 26, 1991 and filed December 31, 1991 and specifically noted that "it is further clear that the attempt by [the victim] to change that testimony was an aberration, offered in hope of winning back the love of her mother." (R. 65). Thereafter, defendant moved to supplement his motion with yet another affidavit from the victim's mother and sought the court to reconsider its decision. In this affidavit, the victim's mother maintained that she did *Page 6 
not give the State permission to interview her daughter, which resulted in the reversal of her recantation. The victim's mother insisted that she did not consent "to allowing the release of medical or therapy records related to [the victim] nor, [did she] * * * voluntarily waive [the victim's] privilege to confidentiality with respect to therapy or other treatment * * *." (R. 67). The mother denied pressuring her daughter yet stated that the victim "has expressed to [her] on numerous occasions a fear that her Father will be released from prison, that he, and [the mother] will reunite, and that [they] will place her in a foster home until she is eighteen years of age." Id. The trial court denied the motion to reconsider. Defendant pursued an appeal and this Court affirmed the denial of the motion for new trial in State v. Peters (July 15, 1993), Cuyahoga App. No. 63169 ("Peters II").
 {¶ 11} In Peters II, this Court observed that defendant's "newly discovered evidence," that is the recantation of the victim, failed to establish "a strong probability that it will change the result if a new trial is granted." Id. Construing the recantation under the relevant law, this Court elaborated that "in considering which of [the victim's] recantations is more credible or believable, the explanation given by [the victim] when she recanted her recantation is entirely reasonable in light of the traumatic ordeal which she has been through with her father and mother and given her youthful age." *Page 7 
 {¶ 12} Thereafter, defendant filed a series of motions aimed towards achieving an early release from prison, i.e., motion for shock probation, motion to modify and suspend further execution of sentence. Defendant also petitioned the court for post-conviction relief.
 {¶ 13} On March 1, 2000, defendant, pro se, also filed a "delayed motion for new trial" based on what he classified as 17 "documented variances in which [the victim] has contradicted her trial testimony." These included, inter alia, references to Dr. DiVincenzo's trial testimony at pp. 1326, 1334-1335, trial exhibit 156 at pp. 977, 980, the "actual report of the doctor's report; 1-16-88, 2-5-88," and "pre-trial transcripts, in which [the victim] had recanted her allegations, prior to trial." (R. 80, p. 18-23).
 {¶ 14} On August 27, 2003, defendant, this time through counsel, filed a motion styled "supplemental motion to modify verdict, or, in the alternative, motion for new trial." That motion cited to "a written report made by Cuyahoga County social worker Vera-Perkins Hughes on March 10, 1988," "a report made by Detective Roger Murray of the Mayfield Heights Police Department * * * from April 6, 1988," and another report "attributable to social worker Vera Perkins-Hughes." Defendant further submitted notes relative to the victim's therapy at Ravenwood Mental Health Center in 1991. (R. 88). *Page 8 
 {¶ 15} On January 9, 2004, defendant sought leave to file another motion for new trial therein he averred by affidavit that he obtained "newly discovered evidence" that "tend[ed] to show [his] innocence." The evidence was allegedly yielded from defendant's employment of a private investigator in 2002. Defendant summarizes his "newly discovered evidence" as follows: "(1) a report made by Detective Roger Murray of the Mayfield Heights Police Department; (2) an excerpt from a Complaint filed with the Disciplinary Counsel by then Assistant Prosecutor Timothy McGinty; (3) an [sic] copy of a statement given by Donna Goldstein; and (4) notes taken from [the victim's] therapy sessions with Vicky Clark of Ravenwood Mental Health Center." (R. 96).
 {¶ 16} The trial court granted defendant leave to file the new trial motion and found it merited consideration. In its order, the trial court referred to the following exhibits:
 {¶ 17} Exhibit A, Affidavit of defendant.
 {¶ 18} Exhibit B, Handwritten "Caseworker Summary for Referral" dated March 10, 1988 to the Legal Department from Vera Perkins-Hughes, including note that "The referral received alleged that [the victim] `stated to the referrant on 3-1-88 that she is being exposed sexually while parents are in bed. Child stated that she is allowed to be in bed with her parents whenever sexual activities take place. Referrant stated that the child can visibly illustrate oral and vaginal sex. Referrant *Page 9 
indicated that seemingly the child has not had physical contact with the parents regarding sexual activities. * * *'"
 {¶ 19} Exhibit C, an unidentified handwritten notation including that "[victim] has been denying it happened saying she just made it all up."
 {¶ 20} Exhibit D, excerpt of Hughes' notes labeled "(12a)," "(12b)," and "12(c)" including notation that "she `cried' when she first found out that her parents were in jail. She also stated that she didn't mind that her father was in jail but did not want her mother in jail. She was glad when they finally were out of jail. She then told me that she had `made it all up.' She gave no explanation why she would make-up such a story. I restated to her that I believed her at school when she first told me about the sexual abuse. She said ok but I still made it all up." In the same document Hughes noted that "[the victim] stated to Dr. DiVincenzo that `her mother told her to change her story around.'"
 {¶ 21} Exhibit E, Detective Murray's report dated 4/6/88. "Dr. DiVincenzo had told Ms. Hughes earlier that [the victim] has been denying the incidents have occurred. Ms. Hughes stated she spoke with Mrs. Goldstein, [the victim's] temporary guardian. Mrs. Goldstein told Ms. Hughes she thinks the reason [the victim] is telling the phycologist [sic] she was lying about the sexual abuse is because one day [the victim] overheard a tape from Ms. Goldstein's answering machine. The call on the answering machine came from [the victim's] mother the day she was released from *Page 10 
jail on bond. Ms. Hughes stated the voice of Mrs. Peters was directed to [the victim], stating she got Mom Dad in a lot of trouble and she will probably never be with them again. Ms. Hughes feels this is the reason [the victim] is denying her previously reported statements."
 {¶ 22} Exhibit F, a transcribed excerpt of a statement given by Donna Goldstein.[1]
 {¶ 23} Exhibit G, 1991 therapy notes of Vicki Clark, including a notation from 6/17/91 that "[the victim] appears arrested at a 4-year-old emotional development"; a notation from 5/23/91 where victim allegedly reported she "lied about the sexual abuse, it never happened. Stated that she wanted her Mom Dad out of her life because they fought all the time. Advised [the victim] that I didn't immediately believe that often our mind can make things confused. Talked w/ [the victim's] mom about this change of [the victim]. Will continue to see [the victim]. Next session will spend some time with mom getting history."
 {¶ 24} Exhibit H, titled "Page 3 of the statement of Detective Harold DeBoe," undated, referring to May 9, 1988 meeting including Prosecutor, victim and Deboe where "[victim] backed down on some of the things she had previously told the pschologists [sic], social workers, and police. The child expressed a deep fearfulness *Page 11 
that her mother would go to jail and would leave her. The child asked me if I had heard the taped message that her mother had left on Mrs. Goldstein's phone answering machine, telling me the message made her very sad."
 {¶ 25} The record includes the following additional documents that were submitted by defendant in his motion for new trial, "Page 3 of document dated June 15, 1988" purported to be an "excerpt of an [unidentified] document submitted to the Disciplinary Counsel by Prosecutor Timothy McGinty"; the October 1991 affidavit of [the victim] recanting trial testimony; and defendant's August 1991 motion for new trial.
 {¶ 26} The matter was transferred to the docket of a visiting judge.[2] Defendant was returned for a hearing on the motion for new trial that took place on November 14-15, 2005.
 {¶ 27} Both sides submitted post-trial briefs. The trial court issued a detailed judgment entry denying defendant's motion for new trial. Defendant appeals assigning two errors for our review. Both relate to the trial court's resolution of defendant's motion for new trial and will be addressed together.
 {¶ 28} "I. The lower court abused its discretion and erred in denying appellant's motion for new trial where new evidence material to the defense was *Page 12 
discovered, which the defendant could not with reasonable diligence have discovered; where there was misconduct by the prosecuting attorney and witnesses for the State, which resulted in a denial of appellant's right to a fair trial and right to due process; and where in light of the foregoing, the verdict is no longer sustained by sufficient evidence or is contrary to law.
 {¶ 29} "II. The lower court abused its discretion and erred in its legal analysis in its denial of appellant's motion for new trial. The lower court improperly confined its analysis to the standards provided for within Crim.R. 33(A)(4) and (A)(6), despite the fact appellant moved the court pursuant to Crim.R.33(A)(2), (A)(4), and (A)(6), as well as constitutional provisions concerning the right to due process and right to a fair trial. Further, the court erred and abused its discretion with regard to the conclusion it reached based upon its analysis of Crim.R. 33(A)(4) and (A)(6)."
 {¶ 30} The decision whether to grant or deny a motion for new trial on the basis of newly discovered evidence is committed to the sound discretion of the trial court. State v. Matthews (1998),81 Ohio St.3d 375. An appellate court will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. State v.Hawkins (1993), 66 Ohio St.3d 339, 350. An abuse of discretion is more than a mere error in judgment, it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 31} Defendant initially moved for a new trial solely on the basis of Crim.R. 33(A)(4). On appeal, defendant contends that he also moved for a new trial on the *Page 13 
basis of Crim.R. 33(A)(2) and (A)(6). Defendant did refer to the additional provisions of that rule in his post-hearing briefs. The State has not raised the issue of waiver and has responded to defendant's arguments on appeal. Accordingly, for purposes of this appeal only, we will presume that defendant properly raised the grounds of Crim.R. 33(A)(2) and (6) below.
 {¶ 32} The relevant provisions of Crim.R. 33 provide as follows:{¶ 33} "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 34} "* * *
 {¶ 35} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 36} "* * *
 {¶ 37} "(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;
 {¶ 38} "* * *
 {¶ 39} "(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the *Page 14 
trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."
A. Crim.R. 33(A)(6)
 {¶ 40} A defendant seeking a new trial based on the ground of newly discovered evidence bears the burden of demonstrating to the trial court that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v.Petro (1947), 148 Ohio St. 505; Hawkins, supra at 350.
1. Pretrial denials.
 {¶ 41} The alleged newly discovered evidence included handwritten notes of Vera Perkin-Hughes, dated March 10, 1988. The record reflects that this document was submitted in type-written form, verbatim, to the jury as State's Exhibit 17 during *Page 15 
trial. Accordingly, the handwritten version of the same document is not newly discovered evidence.
 {¶ 42} Defendant also submits as newly discovered evidence a hand-written note attributed to Detective DeBoe and/or Murray that includes a notation that "the victim] has been denying it happened saying she just made it all up." Also, attached is a "supplementary report" also indicating that "Dr. DiVincenzo has told Ms. Hughes earlier that [the victim] has been denying the incidents." The same document also notes that "Mrs. Goldstein told Ms. Hughes she thinks the reason [the victim] is telling the phycologist [sic] she was lying about the sexual abuse is because one day [the victim] overheard a tape from Ms. Goldstein's answering machine. The call on the answering machine came from [the victim's] mother the day she was released from jail on bond. Ms. Hughes stated the voice of Mrs. Peters was directed to [the victim], stating she got Mom and Dad in a lot of trouble and she will probably never be with them again. Ms. Hughes feels this is the reason [the victim] is denying her previously reported statements." And finally, an excerpt of handwritten notes attributed to Ms. Hughes providing "she `cried' when she first found out that her parents were in jail. She also stated that she didn't mind that her father was in jail but did not want her mother in jail. She was glad when they finally were out of jail. She then told me that she had `made it all up.' She gave no explanation why she would make-up such a story. I restated to her that I believed her at school when she first told me about the *Page 16 
sexual abuse. She said ok but I still made it all up." In the same document, Hughes noted that "[the victim] stated to Dr. DiVincenzo that `her mother told her to change her story around.'"
 {¶ 43} After an exhaustive review of the record, it is apparent that this information is merely cumulative of information that was provided to the jury; the substance of the information contained in these documents was disclosed to the defense; and, it does not disclose a strong probability of changing the outcome of the trial.
 {¶ 44} During the hearing on the instant motion for new trial, the State introduced Exhibit 6.[3] At the hearing, defense counsel vehemently denied any knowledge of this motion that was filed by the State in the co-defendant's case. Conversely, the individual who had prosecuted the case against defendant adamantly maintained that he recalled disclosing State's Exhibit 6 to defendant's counsel, in fact, he recalled discussing it on the record. The record supports that recollection. E.g., Volume II of Trial Transcript at pp. 283-293 refers to "[t]he motion in opposition to defendant, Nancy Peters' request for public funds to hire an expert to attack the State's witness and to psychoanalyze the victim." The information was made known to the defense on the record during the hearing on defendant's motion *Page 17 
to suppress evidence. While defense counsel claimed they had not seen the motion before that point, it cannot be disputed that they were aware of it before the trial.[4]
 {¶ 45} State's Exhibit 6 provides, in part, as follows: "In April 1988, Detective DeBoe of the Mayfield Heights police discovered that attempts were being made to influence or intimidate the victim of the sexual abuse, , the 8-year-old child of the defendants. The child had been taken from the defendants' home by the Department of Human Service Protective Services Unit, and placed in the home of defendant Nancy Peters' sister, Donna Goldstein. Mrs. Goldstein informed police that since the placement of the victim in her home, Nancy Peters had been attempting to contact the child in violation of the contract with the Welfare Department.
 {¶ 46} "The message had the desired effect. The child was petrified and so physically upset that they considered hospitalizing her. On the evening of May 9, 1988, the victim, , was interviewed by the prosecutor with police present. The first thing that came out of her mouth was to tell us that she received a phone call from her mother. She expressed what seemed a very sincere fear that her mother was abandoning her for good. She reverted back to this theme throughout the questioning. The little girl told an emotional and horrifying tale of brutality and sexual abuse. She described the sex acts of her parents in front of her, the baths with her *Page 18 
father and illicit touching. However, she now denied that either parent had performed cunnilingus on her or that her father had ever performed any vaginal penetration. * * *"
 {¶ 47} The documents submitted by defendant report instances where the child was "backing off some of the things she had said and that she was denying sexual abuse to the psychologist and pediatrician. This, however, is substantiated by the record and was the subject of quite extensive direct and cross-examination.
 {¶ 48} The record reflects that both the psychologist referred to by Ms. Hughes and the child victim's pediatrician, who conducted a complete examination of the child testified at trial. Both testified about the reports they had prepared. Dr. DiVincenzo, the psychologist, testified repeatedly that the child denied any sexual intercourse with her parents and he repeatedly stated that the child's report of sexual abuse varied and was inconsistent. Dr. Rosenstein, the pediatrician, testified that the child denied being touched by either of her parents. Dr. Rosenstein's conclusion following the exam was "Entirely normal exam. Child is very relaxed during exam. Not conclusive on any physical or any sexual child abuse." (Tr. Vol. V, p. 1387).
 {¶ 49} Further, there are instances in the record where Mrs. Peters claimed that the child told detectives that she lied. It is undisputed that the defense counsel were aware of Mrs. Peters' testimony on this point. Yet, they did not inquire of either the victim or Detective DeBoe about this alleged statement. E.g., Transcript p. 1215.
 {¶ 50} Lastly, defendant contends the handwritten notes of Vera Perkins-Hughes that concern notations of her visits with the victim contains powerful denials *Page 19 
by the victim that were previously unknown. Again, the notes revolve around statements made by the victim after receiving a disturbing message from her mother.
The record reflects a lengthy cross-examination of this witness at trial. During her testimony, Ms. Hughes disclosed a questionnaire completed by the victim where she made inconsistent statements concerning sexual abuse by defendant, or lack thereof.
Further, Ms. Hughes testified about her meeting with the victim on March 24, 1988, where the victim stated she was going to lie and say she made it all up. The handwritten note does provide that the victim actually said she made it all up. Defendant's quotation of Ms. Hughes' testimony at the 2005 hearing on his motion for new trial that her handwritten notes are "truthful" is taken wholly out of context. Ms. Hughes plainly testified that she had absolutely no recollection of this case whatsoever and no memory of the parties involved in the 1988 trial. In any case, the discrepancy between her trial testimony and her notes amounts to evidence that would "merely impeach or contradict the former evidence" and thus does not satisfy the criteria of Crim.R.33(A)(6) as a ground for a new trial.
2. Post-trial statements {¶ 51} The remaining documents appended to defendant's motion for new trial all post-date the trial and/or are already part of the record. The newly discovered evidence concerning the statement of Donna Goldstein and the notes of the therapist from Ravenwood fail to satisfy the criteria of Crim.R. 33(A)(6). *Page 20 
 {¶ 52} These documents continue to demonstrate the vacillation of the child victim's testimony as the result of obvious and extreme manipulation. The record and exhibits in this voluminous record consistently portray an effort to influence the testimony of a young child to win the affection of her mother. Any denials by the victim were occasioned by the mother's disapproval or influence. This is first reflected in the trial testimony where the victim began "backing down" after receiving an emotionally disturbing message from her mother. The mother's allegiance to the defendant is best illustrated by the incredible testimony she gave at the suppression hearing and then at trial. The mother continued to pursue recantations from the victim during her visits with the victim through social services. Eventually, the victim capitulated and recanted in 1991, which was the subject of one of defendant's motions for new trial. An attorney unrelated to this case interviewed the child and submitted an affidavit that the victim had also recanted to him. Nonetheless, that attorney represented the mother in her divorce proceeding and was introduced to the child by the mother. Thus, the neutrality of the attorney must be considered in the context of the mother's potential influence. Although the mother was not present during the actual interviews, she was obviously with her daughter immediately preceding them.
 {¶ 53} After discussions with social services and the police, the victim recanted her recantation explaining she had only changed her story to please her mother. In an effort to have the trial court reconsider its denial of that motion for new trial, the *Page 21 
mother submitted an affidavit stating she had not consented to have her child speak to social services or police and had not consented to the release of any medical information concerning the child victim. This Court affirmed the denial of defendant's motion for new trial based on all this information and that is the law of the case.
 {¶ 54} The notes of the Ravenwood therapist reflect that the mother was present during most of the sessions. A review of the partial transcript of Donna Goldstein's interview does not lead one to the conclusion that she had manipulated the victim to testify against the defendant. Instead, Goldstein related that she had a conversation with the victim, where she explained the potential implications of her statements.
 {¶ 55} Accordingly, this evidence is cumulative of the fact of the child's well established tendency to be inconsistent and varied about the sexual abuse. The jury did hear testimony that the victim at times changed her story and the defense was given information that documented her prior inconsistent statements. In sum, this evidence (1) fails to discloses a strong probability that it would change the outcome in the event of a new trial; (2) is cumulative of other evidence disclosed to the defense and/or presented to the jury; and (3) would merely contradict other evidence.
 {¶ 56} The trial court did not err in denying defendant's motion for new trial under the standard of Crim.R. 33(A)(6).
B. Crim.R. 33(A)(2). *Page 22 {¶ 57} When a trial court denies a motion for new trial that was based on the alleged prosecutorial misconduct of withholding or suppressing exculpatory evidence, the appropriate standard of review "is whether the nondisclosure was material to the finding of guilt based upon the totality of the record and whether there is a reasonable likelihood that the undisclosed material would have affected the guilty verdict, thereby preventing the defendant from having a fair trial; If [sic] yes, then reversal is warranted." State v. Kitzler (Feb. 1, 1996), Cuyahoga App. No. 69076, citing State v. Johnston (1988), 39 Ohio St.3d 48, 60;State v. Staten (1984), 14 Ohio App.3d 78, leave to appeal to the Supreme Court of Ohio overruled on September 12, 1984 (Case No. 84-845).
 {¶ 58} The Ohio Supreme Court has held that "in determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material `only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Johnston, 39 Ohio St.3d at 61, quoting United States v.Bagley (1984), 473 U.S. 667, 682, see, also, Pennsylvania v.Ritchie (1987), 480 U.S. 39, 57.
 {¶ 59} A thorough review of the record belies defendant's contention that the prosecutor withheld any of the subject material. The information at issue concerns select notes of an investigative social worker, handwritten police notes, and otherwise *Page 23 
information that was completely outside the control of the State. There is no evidence that the State had any of the notes that defendant complains of not receiving. And, the record does bear out that the prosecutor did disclose the information that is contained in State's Exhibit 6 as set forth previously in this opinion. In particular, the prosecutor painstakingly detailed various dates and events. The prosecutor specifically mentioned his meeting with the victim on May 9, 1988, including the presence of police and that the victim made specific inconsistent statements that essentially retracted the sexual abuse she had previously accused defendant of inflicting on her. (Vol. II of Trial Tr. at pp. 283-293.)
 {¶ 60} Additionally, there is not a reasonable likelihood that the material, even if utilized by the defense, would have affected the guilty verdict. The defense established to the jury, through various witnesses, that the victim varied in her testimony against defendant, sometimes denying sexual abuse entirely. While the defense chose not to question the victim directly on this point, it was illustrated through the testimony of witnesses that included Ms. Hughes, Dr. DiVincenzo, and Dr. Rosenstein. The totality of the evidence requires the consideration of the testimony of the victim's mother and defendant as well, which was, at times, itself contradictory and incredible. Finally, the defense largely focused on the credibility, or lack thereof, of the victim in closing arguments to the jury. The subject evidence, when construed with the totality of the trial record, does not undermine confidence in the verdict. *Page 24 
 {¶ 61} The standards of Crim.R. 33(A)(2) were not met.
C. Crim.R. 33(A)(4) {¶ 62} In its Judgment Entry the trial court correctly noted that pursuant to Crim.R. 33(A)(4), "defendant must prove that the verdict against him is not supported by sufficient evidence." See Judgment Entry dated March 8, 2006, p. 7.
 {¶ 63} The verdict against defendant was supported by sufficient evidence. A litany of witnesses provided testimony in this case, including, the school psychologist, the principal, a social worker, a detective, a psychologist, a pediatrician, the legal custodian, and the maternal grandmother. All the witnesses opined that despite a lack of physical evidence, the alleged sexual abuse, in fact, occurred. The victim's testimony supported the finding that she had been sexually abused by defendant. Defendant and his wife denied it and defendant elicited evidence before the jury that the victim had made inconsistent statements. Defendant also emphasized the lack of objective medical evidence.
 {¶ 64} In challenging the trial court's decision on appeal under this standard, defendant takes exception with its conclusion that "the abuse was confirmed by the testimony of two doctors." The record supports the trial court's conclusion. Dr. DiVincenzo acknowledged that the victim denied sexual intercourse and that there was no physical evidence of sexual abuse. But, he also testified that it was his opinion that the sexual abuse did occur. Likewise, Dr. Rosenstein admitted that her physical examination of the victim did not reveal evidence of sexual abuse. She also, *Page 25 
however, testified that she had suspected that the victim suffered from sexual abuse even before social services contacted her.
 {¶ 65} The evidence defendant offers as a basis for seeking a new trial was either known to the defendant and is not otherwise sufficient to undermine confidence in the verdicts. The trial court did not err in overruling defendant's motion for new trial under the standards set forth in Crim.R. 33(A)(4).
 {¶ 66} Assignments of Error I and II are overruled.
Judgment affirmed.
It is ordered that appellant recover of appellee its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., *Page 26 
and MARY EILEEN KILBANE, J., CONCUR
[1] Defendant believes Goldstein "pressured" victim. A review of the excerpt does not lead to this conclusion, but rather that Goldstein simply reviewed with [the victim] the possibilities and implications that could flow from her contradictory statements.
[2] Defendant's motion for new trial implicated allegations of prosecutorial misconduct. The prosecutor who represented the State at defendants' trial is currently a Judge of the Cuyahoga County Common Pleas Court.
[3] State's Exhibit 6 is captioned "Motion in Opposition to Defendant Nancy Peters' Request for Public Funds to Hire An Expert to Attack the State's Witnesses and to Pschoanalyze [sic] the Victim." The Motion bears the date "7/8/88" in its top left corner.
[4] The pre-trial hearing occurred on November 29, 1988 and the trial commenced on December 6, 1988. *Page 1